## Spruhen vs. Stout and others.

*May 16 — June 4, 1881.*

*(1) Lien of mechanic. (2, 3) Lien of material man. (4) Costs in an action to enforce such a lien.*

1. Where one is employed to work for a firm in the erection of a building, and continues to work under the direction of the partners or one of them, supposing himself to be engaged during the whole time in the service of the firm, and having no intimation to the contrary, the fact that a part of his labor was employed in the preparation of materials really belonging to one partner, some of which were not ultimately used for any partnership purpose, will not relieve the firm from liability to him for the whole of such labor, nor prevent his having a lien on the building for the whole amount.

2. S. & M., manufacturers of mill machinery, offered to furnish N. & Co., who were building a mill, various articles at the prices specified in a written memorandum; but N. & Co. did not sign the memorandum, nor otherwise bind themselves to purchase, except by ordering from S. & M., from time to time, various articles named in the memorandum, together

with articles not so named. Within six months after the last article was furnished, S. & M. filed a claim of lien upon the mill for the whole amount of their account, but the last article furnished by them *of those named in the memorandum*, was furnished more than six months before the filing of such claim. *Held*, that while the memorandum fixes the price of goods actually ordered thereon, there is no ground for saying that it was a complete binding contract, or that the right to a lien for the articles named therein was lost by the failure to file the claim within six months after the last of that class of articles was furnished.

3. Where a "draft tube" was ordered and furnished with the intent that it should be attached to the realty with the other machinery of the mill, but was not in fact so attached at the time of the filing of the petition for a lien, in which its value was included: *Held*, that it should be treated as a fixture as between the material man and mill-owners, and a lien for its value allowed.

4. The action to enforce a mechanic's lien, under our present statutes, is equitable in its nature, and costs therein are at the discretion of the court; and an allowance in this case against the principal defendants, and in favor of other parties made defendants as also claiming a lien for materials, of costs for procuring and serving on the principal defendants a copy of the referee's report (no costs for that item having been allowed any other party), is *held* no error.

APPEAL from the Circuit Court for *Chippewa* County.

Action to enforce a mechanic's lien upon certain mill property of the defendants *Newton* and *Hopkins*, who were copartners under the firm name of *S. M. Newton & Co.* Several mortgagees of the premises, and holders of prior and subsequent liens thereon, were also made parties defendant.

The complaint alleged that the plaintiff had worked upon the mill in question one hundred and eight days at the agreed price per day of $1.50; that the sum of $98.88 had been paid to him, and there was due a balance of $63.12; and that a petition for a lien upon the premises, for that sum, had been duly filed April 16, 1879. It further stated the facts relative to the other liens upon the mill, and prayed that all such claims might be ascertained and adjusted, and the premises sold to satisfy the amount of the liens.

The answer of the defendants *Stout* and *Mills* alleged that,

between the 13th of March and the 15th of November, 1878, they furnished to the firm of *S. M. Newton & Co.* machinery and material to be used in the erection and construction of said mill, to the amount of $3,901.88; that of such sum there was then due and unpaid $2,623.23, with interest at eight per cent. from February 17, 1879; and that a petition for a lien upon the premises for such sum was duly filed April 22, 1879, within six months after the sale and delivery of the materials aforesaid. This answer also contained a full statement of the machinery and materials furnished, including a draft pipe under date November 11, 1878, and "one proof and one paint-staff and spindle" under date November 15, 1878.

The answer of the defendants *Newton* and *Hopkins*, in substance, denied the allegations of the complaint relative to the amount due to the plaintiff, and his lien therefor. It further alleged that, before the commencement of the construction of the mill in question, they entered into a contract with the defendants *Stout* and *Mills*, by which said *Stout* and *Mills* agreed to furnish, and the said *Newton* and *Hopkins* agreed to purchase, at a specified price, a large quantity of machinery for said mill; that, in pursuance of such contract, and between the 13th of March and the 5th of August, 1878, said *Stout* and *Mills* delivered all the articles specified in their answer, except the item of a draft pipe, and the item of one proof, one paint-staff and spindle; that said draft pipe was not purchased by said *Newton* and *Hopkins*, but was sent to them by *Stout* and *Mills* with a request that it be tested by them, and that it had never been used; that said proof and paint-staff and spindle were not purchased to be used and were not used in the construction or erection of the mill; and that the petition for a lien had not been filed by said *Stout* and *Mills* until after the time limited by law therefor had expired.

The answers of the other defendants are not material upon this appeal.

The cause was tried before a referee. With reference to the claim of *Stout* and *Mills*, it appeared from the evidence that in March, 1878, *Mr. Mills* and *Mr. Newton* had a conversation with reference to machinery for the mill; and that at that time *Mills* made a memorandum and gave it to *Newton*, as follows: "Independence, March 15th, 1878, Chippewa Falls, Wis. Estimate for *S. M. Newton*, to which he agrees, and which will be signed when we meet again, namely: [here follow the items]." This memorandum was not signed by either party, but was indorsed on the back by *Newton*, as follows: " Filed for reference, if contract is closed."

The evidence further tended to show that the articles charged in the statement of *Stout* and *Mills*, under date November 15, 1878, were furnished prior to August 5, 1878, but that there was a disagreement as to the quality and price of such articles, which was not adjusted until the date of the charge; that on said 15th of November, 1878, there was a settlement of the account between the parties, by which the same was adjusted at the amount charged in the statement of *Stout* and *Mills* — $3,901.88 — with interest added; that *Newton* and *Hopkins* gave two notes therefor, one of $1,317.48, payable in thirty days, and one of $2,623.23, payable in ninety days; that the former note was paid at maturity; and that the latter note was renewed February 17, 1879, for ninety days, and had never been paid. The evidence also showed that the draft tube was furnished November 11, 1878, upon the order of *Newton* and *Hopkins*, to be used in the construction of the mill; but that it had never been attached thereto or used in connection therewith.

Other facts proven upon the trial will sufficiently appear from the opinion of the court.

The referee found, among other things, that there was due from the defendants *Newton* and *Hopkins* to the plaintiff the sum of $53.12, with interest from November 18, 1878, and to the defendants *Stout* and *Mills* the sum of $2,563.23, with

interest at eight per cent. per annum from February 17, 1879, and that said sums, together with the costs of the action, constituted a lien upon the mill.

A motion to set aside the report of the referee was denied; and from a judgment in accordance with such report, the defendants *Newton* and *Hopkins* appealed.

For the appellants there was a brief by *Wheeler & Marshall*, their attorneys, with *Bingham & Pierce*, of counsel, and oral argument by *Mr. Bingham.*

For the respondent *Spruhen* there was a brief by *W. F. Boland*, and for the respondents *Stout* and *Mills* a brief by *Bartlett & Hayden*, and oral argument by *Mr. Bartlett.*

COLE, C. J. There is ample justification in the record for giving the plaintiff a lien upon the flouring-mill for the amount due him on his account. There is no controversy about the number of days he worked, or as to the value of his services; but it is insisted, upon the part of the appellants, that the evidence shows that the plaintiff worked a part of the time for *Newton* individually and a part of the time for the company, and that several payments were made on his account. And the contention of counsel is, that these payments were made on behalf of the firm by *Newton*, and should be appropriated to the discharge of the partnership debt, and could not be applied to the payment of work performed for *Newton* individually. The evidence shows that the plaintiff was employed by *Newton* and set to work in getting out brick from the old Tremont ruins. It is a fact clearly established that much of this brick thus got out was actually used in the construction of the firm's mill. But it is said that these brick really belonged to *Newton*, were his individual property sold to the firm, and therefore the partnership ought not to be charged with the plaintiff's services while getting them out. Conceding this to be so, that the brick were really *Newton's* property, still, we think the law would give the plaintiff a

lien upon the mill for the work performed by him in getting out brick which were used in its construction. The plaintiff, while thus employed, would be deemed a laborer engaged in aiding in the erection of the mill and providing materials for the same, within the spirit and intent of the statute. Chapter 153, Tay. Stats. About this there would seem to be no ground for doubt. But, however this may be, it appears that the plaintiff was not informed, nor did he know, that he was working at any time for *Newton* individually, if such was the fact. He doubtless supposed, and had the right to conclude, he was in the employ of the firm all the time. Nor had he any means of knowing that the brick in the Tremont ruins did not belong to the partnership. He worked all the time as directed by *Newton*, under the same engagement, sometimes on the mill and sometimes in getting out brick. What portion of his time was taken up in getting out brick which did not actually go into the mill, but were sold to other parties, it is impossible to tell from the evidence. And when *Newton* made payments on the account, he did not intimate or inform the plaintiff that part of the items in the account only were partnership debts, and that the payments must be applied in discharge of those items. When, then, at the trial, it was claimed that a part of the work was performed for *Newton* individually, and the plaintiff declared his election to apply the payments already made to the discharge of that debt, we do not think it was error on the part of the referee and court to permit him to make such an application; for, as we have said, the plaintiff had the right, under the circumstances, to suppose he was working for the firm all the time under the same contract of hiring. Having been employed by *Newton* in the first instance, working as directed by him, now on the mill, then in getting out brick from the Tremont ruins, without notice from any one that any of his work was the individual concern of *Newton*, the plaintiff had the right to assume that he was in the employ of the partnership all the time. It was certainly in

the power of the partners to undeceive him in that regard, and let him know what were partnership concerns and what not. The plaintiff surely could not know about the private arrangements of the partners, or what was an individual matter. Apparently he was in the service of the partnership all the time, and had the right to look to the firm for the pay of all his services.

2. The next question relates to the lien of *Stout* and *Mills*. In respect to that, counsel for the appellants insists that the time limited by law for them to file their claim for a lien for machinery and articles furnished for the mill had expired before such lien was filed. This position is based upon the assumption that the claim of *Stout* and *Mills*, except as to the two items furnished in November, 1878, is for an indebtedness which accrued under a special contract bearing date March 15, 1878. It is claimed by counsel that all of the articles and machinery referred to in that contract were furnished prior to August 5, 1878, and that for the purposes of this action this must be deemed the date of the last charge. Confessedly the petition for a lien was not filed within six months from that time. But it seems to us incorrect to treat the writing or memorandum of March 15, 1878, as a complete, binding contract. It is rather in the nature of a written offer or proposition on the part of *Stout & Co.* to furnish *Newton & Co.* the articles and materials referred to therein at the prices specified. *Newton & Co.* did not sign this writing nor in any way bind themselves to purchase the articles. Doubtless, when they ordered any of the enumerated articles, they became bound to pay the prices stated; in other words, they accepted *pro tanto* the proposition or offer made. But that this memorandum amounted to a mutual, binding contract between the parties, is a position quite inconsistent with its obvious meaning and intent. *Newton & Co.* probably ordered articles and machinery from *Stout & Co.* under this written "estimate" or offer as to prices; but they also ordered machinery which *Newton*

himself says would not come under the written proposition. We cannot, therefore, look upon the written memorandum as amounting to a binding contract, but it should be treated merely as a proposal to furnish certain articles and machinery for the mill for the prices named.

It appears that from time to time *Newton & Co.* made orders and received machinery under the proposition. The evidence shows most conclusively that all the articles charged in the account of *Stout & Co.* were actually ordered and received by *Newton & Co.* With the exception of one spindle, all the articles were ordered for the mill, and were deemed necessary for its use and successful operation. It is true, it appears that the draft-pipe had not been permanently attached to the machinery so as to become a part of the freehold when the petition for a lien was filed. But the time limited by law for *Stout & Co.* to file their lien would not expire until six months from the 11th of November, 1878, the date of the last charge for machinery furnished for the mill. It is very clear that there was a running account between the parties, which was not closed until November, 1878. And it is a circumstance of no little significance that on the 15th of that month the parties settled and adjusted their accounts, and agreed upon the balance due *Stout & Co.* for articles and machinery furnished, and notes were given for such amount. After such a settlement all question as to the amount due or as to articles ordered and furnished should be put at rest. There was a deduction made by the referee and court from the claim of *Stout & Co.*, but the latter made no complaint about this; therefore the question whether the deduction was right or wrong need not be considered.

But it is said, in no event could *Stout & Co.* have a lien for the draft tube, the price of which was included in their account, and in the note given by *Newton & Co.* The draft tube was procured, intended to be placed under the water wheel, so as to increase the power, but was not actually annexed

to the machinery or mill so as to become a fixture when the lien was filed. And the question is, Can *Stout & Co.* have a lien on the mill for the price of the draft tube? As against the owners of the building, or their assignee, they undoubtedly could, within the decision of *Cooper v. Cleghorn*, 50 Wis., 113. Indeed, the remarks made in that case, on page 122, are strictly applicable to the question before us. The draft tube, though not so attached to the machinery as to become a part of the freehold, was ordered and designed to be attached or permanently annexed to the mill, so as to become a fixture. This was the purpose for which it was procured, and it was doubtless the neglect of *Newton & Co.* that it was not permanently attached. Under the circumstances there is nothing inequitable in giving *Stout & Co.* a lien for the price.

3. The remaining question refers to the costs. In *Willer v. Bergenthal*, 50 Wis., 474, it was held that a suit under the present statute to foreclose a mechanic's lien was an equitable action, and of course the costs would be regulated by the rules applicable to that class of cases. In this case, conforming to the present statute, all persons who had filed liens and all mortgagees were made parties defendant. So far as we are able to judge from the bill of exceptions, there was no question as to the liens of any of the parties except the plaintiff and *Stout & Co.* As to the right of the latter firm to a lien for their claim, there seems to have been a sharp contest. In the taxation of costs, they taxed $14 for procuring and serving a copy of the referee's findings, and also the notice to confirm the report. The plaintiff did not tax costs for a copy of the findings, and there was no taxation except for the copy procured by *Stout & Co.* The $14 was allowed them in the taxation, and, as we think, properly. The matter of costs in equitable actions is always within the discretion of the court, and it is idle to say there was any abuse of that discretion in allowing that item to *Stout & Co.* They and not the plaintiff performed the service or incurred the expense of the copy

served, and were entitled to charge for it. Whether each of the defendants could have charged $14, had they served a copy of the findings, is a question we need not determine.

Upon the whole record, we think the judgment was correct and must be affirmed.

*By the Court.*— Judgment affirmed.