GOODMAN and others, Respondents, vs. BAERLOCHER, imp., Appellant.

*September 8 — October 2, 1894.*

*Lien of subcontractors, etc.: Destruction of building before completion: Filing of claim: Neglect of duty by clerk.*

1. Where a building being erected by a contractor is destroyed before its completion, material men and laborers are not entitled to any lien on the land under sec. 3315, S. & B. Ann. Stats.
2. Under sec. 3318, R. S., providing that no lien shall. exist unless a claim therefor is filed within six months, the right to a lien is secured when, within that time, a claim is delivered to and left with the clerk to be filed; and the claimant will not be prejudiced by the failure of the clerk to perform his duty.

APPEAL from the Circuit Court for *Douglas* County. The plaintiffs in this action, which is a consolidation of five several claims or actions by the respective claimants into one, sought to enforce liens for divers sums for materials and labor furnished and performed to and for the defendants Gross & Heimer, contractors, in and about the construction and erection of a building .for the defendant *Baerlocher*, under a contract with her, upon lots 3 and 4 in block 3 in the fifth division of West Superior, Wis., for the sum of $5,150, exclusive of plumbing, gas fitting, and tin work, to be completed by August 8, 1891. Gross & Heimer had the building about two thirds completed, July 16, 1891,

when it was blown down and destroyed, except the foundation consisting of piles driven in the ground. On August 5, 1891, Gross & Heimer again commenced the construction and erection of the building mentioned in the contract, on the same foundation, on said premises, under their said contract, and continued work thereon until November 15th in the same year; and, before any of the claims for liens on the several demands in this action had been filed in the office of the clerk of the circuit court, the defendant *Baerlocher* had paid said contractors, Gross & Heimer, or on their account, the full contract price for the said building, and on July 31, 1891, and before said claims for liens were filed, she borrowed of the defendant Sheldon $6,000, to be paid in seven years, with interest at eight per cent. per annum, and secured the same by note and mortgage of said lots, and this entire sum was expended in paying Gross & Heimer for constructing said building, and on debts contracted by them for that purpose.

(1) The claim of the plaintiffs *Goodman, Wilcox & Co.* is for $71 for materials that went into the first building. (2) The claim of the plaintiff the *Warehouse & Builders' Supply Company* was wholly for material that went into the same building. (3) The claim of *Peyton, Kimball & Co.* was for a balance for material, in the sum of $887.88, all of which went into the first building, except $75 thereof. (4) The claim of *J. B. Noyes & Co.* was for a balance of $209.66 for lumber and materials that went into the second building. (5) The claim of the plaintiff *L. H. Paddock* was for work and labor performed by him for the contractors in the first building to the amount of $26.10, and $8.80 on the second building, and as assignee of divers other small claims for work and labor for said contractors on said building, $145.82 of which was done and performed on the first building, and $38.55 on the second.

A question arose as to the validity of the claim for a lien

filed by *J. B. Noyes & Co.*, on the ground that although
it was deposited with the clerk of the proper court on the
20th day of November, 1891, and thereafter remained in
his office as part of the files thereof, said clerk having re-
ceived the same with another lien petition without notic-
ing the fact, the former being folded inside of the latter,
so that the petition in question was not indexed, neither
was any file mark placed thereon, until the 24th day of
May, 1892.

The defendant *Baerlocher* insisted, among other things,
that Gross & Heimer, contractors, entered into an agree-
ment with said *Noyes & Co.* whereby they were to furnish
and sell all the lumber necessary to complete said building
for the agreed sum of $992.82, and that *Noyes & Co.* were
not to furnish said contractors any more or other lumber
to be used on the building, except as provided by said con-
tract, without the consent of the defendant; and this was
upon the express understanding that said premises would
not be subject to any lien by reason of any more or other
lumber furnished by said *J. B. Noyes & Co.* and used in
said building without such consent. The testimony on this
subject was conflicting, and the court, in substance, found
against the defendant's contention.

As conclusions of law the court found: (1) That the
destruction of the first building did not cut off the liens on
the premises upon which such building was situated, for
indebtedness accrued for material and labor in its construc-
tion. (2) That the liens for indebtedness accrued in the
construction of the first building have precedence over the
mortgage to the defendant Sheldon, the building having
been commenced before the giving of such mortgage, but
that as the construction of the second building was com-
menced subsequent to July 31, 1891, the date of the mort-
gage lien, all liens that exist for indebtedness which accrued
in the construction of such second building are subject to

said mortgage lien; that the claimants the *Warehouse &
Builders' Supply Company, Goodman, Wilcox & Co., H. M.
Peyton* and *L. A. Barber*, surviving partners of Peyton,
Kimball & Barber, for materials, etc., were entitled to liens
upon all the interest of defendant *Baerlocher* in and to the
lots described in the complaint, upon which the building
was situated in the construction of which the indebtedness
accrued at the time of its commencement; that said *Peyton*
and *Barber*, as surviving partners, etc., were entitled to a
lien for the said sum of $75, and the said *J. B. Noyes &
Co.* for $209.61, both of which claims were for materials,
etc., and *L. H. Paddock* for labor in the sum of $47.35
upon the building actually constructed upon the said lots,
and upon all the right, title, and interest of the said defend-
ant *Baerlocher* in and to the lots at the time of the com-
mencement of the construction of the first building, for
$171.92 for work and labor thereon. And the court ren-
dered judgment accordingly, from which the defendant
*Baerlocher* appealed and assigned various errors.

*W. E. Hoehle, J. P. Geiser,* and *D. E. Roberts,* for the
appellant.

For the respondents *Peyton, Kimball & Barber* and *J. B.
Noyes & Co.* there was a brief by *Ross, Dwyer & Hanitch,*
and oral argument by *W. D. Dwyer.* They argued, among
other things, that the duties imposed upon an officer by way
of indexing and indorsing, after the paper has been put
into his custody, do not constitute any part of the filing so
far as the party delivering the paper is concerned. *Cook v.
Hall,* 6 Ill. 575; *Naylor v. Moody,* 2 Blackf. 247; *Gorham
v. Summers,* 25 Minn. 81; *Holman v. Chevaillier,* 14 Tex.
337; *Bishop v. Cook,* 13 Barb. 329; *Dodge v. Potter,* 18 id.
193; *Dikeman v. Puckhafer,* 1 Abb. Pr. (N. S.), 32; *People
v. Bristol,* 35 Mich. 28; *Smith v. Waggoner,* 50 Wis. 155. If
a party has complied with the statutory requirements his
rights cannot be prejudiced by the neglect or misconduct

of the officer. *Floyd v. Chess-Carley Co.* 76 Ga. 752; *Speak-man v. Knight*, 3 Phila. 25; *Grubbs v. Cones*, 57 Mo. 84.

A separate brief was signed by *John Brennan* for the respondent *Paddock*, and *Swift, Murphy & Bundy* for the respondents *Goodman, Wilcox & Co.*, and the cause was argued orally by *Mr. Brennan.* · They contended, *inter alia*, that in this state the object of the lien law is to provide security for the payment of claims of laborers and material men; and the lien on the land is not an incident to that on the building. In states where the object of the law is the same as ours it is held that the destruction of the building does not destroy the lien. *Clark & Co. v. Parker*, 58 Iowa, 509; *Freeman v. Carson*, 27 Minn. 516; *Steigleman v. Mc-Bride*, 17 Ill. 301; *Gaty v. Casey*, 15 id. 189; *Schwartz v. Saunders*, 46 id. 18; *Suntag v. Brennan*, 75 id. 279; *Mc-Laughlin v. Green*, 48 Miss. 175; 2 Jones, Liens, § 1539; Phillips, Mech. Liens (2d ed.), 22.

PINNEY, J. 1. The original contractors, Gross & Heimer, had not performed their contract when the first building, being in an incomplete condition, was destroyed. It had not been delivered to or accepted by the owner, and was therefore at the risk of the contractors, and the destruction of the building did not excuse them from performing the contract. *Dermott v. Jones*, 2 Wall. 1; *Adams v. Nichols*, 19 Pick. 275; *Tompkins v. Dudley*, 25 N. Y. 272; *School Trustees v. Bennett*, 27 N. J. Law, 515. In *Tompkins v. Dudley, supra*, it was held that the owner of the lots might recover back from his contractor payments in such case which he had made on account of the building. In this case the building had not only not been completed, but it had been utterly destroyed, so that the owner of the ground had received no benefit from the materials and work and labor employed in attempting to build it, and the original contractors could not have recovered anything or enforced

a lien for what had been furnished or done in attempting to construct and erect the building. Whether the subcontractors or material men and laborers under the contractors are in any better situation, is the question to be determined.

Sec. 3314, R. S., provides that: "Every person who as principal contractor, . . . performs any work or labor, furnishes any material, . . . in or about the erection, construction, . . . of any dwelling house, building, . . . *shall have a lien thereon, and upon the interest of the owner of such dwelling house, building, . . . in and to the land upon which the same is situated, . . .* not exceeding in extent," etc. And sec. 3315 extends the right to "every person who, as subcontractor of a principal contractor, or employee of any contractor or subcontractor, performs any work or labor for, or furnishes any materials to a principal contractor or subcontractor in any of the cases mentioned in the preceding section," if within sixty days thereafter he gives the specified notice in writing to the owner, or his agent, of the property to be affected by such lien, "with a statement of the labor performed or materials furnished, and the amounts due from such principal contractor or subcontractor, and that he claims the lien given" by ch. 143, R. S.

The lien provided by the statute is "in the nature of a charge on land given by statute to the persons named therein to secure a priority or preference of payment for the performance of labor or supply of materials to buildings or other improvements, to be enforced against the particular property in which they have become incorporated, in the manner and under the limitations therein expressly provided." Phil. Mech. Liens, § 9. In *Van Stone v. Stillwell & B. Mfg. Co.* 142 U. S. 128, 136, it was said, in substance, that the lien is given to secure priority of payment of the price and value of work performed and the materials furnished; that "it is the *use* of the materials fur-

nished and *labor expended* by the contractor, *whereby the building becomes a part of the freehold*, that gives the material man or laborer his lien under the statute." The object is not only to encourage building, but to afford the contractor, material man, or laborer security upon and against the property of the owner materially increased in value by the materials and labor wrought into it, and so rests upon the strongest equitable basis, for the building becomes a part of the realty, and it is the principal matter, to which the lien on the realty seems to be an incident, and without which the lien on the building would be fruitless or of little value. In *Mallory v. La Crosse Abattoir Co.* 80 Wis. 170, 175, in which the remedy given by this statute to subcontractors, laborers, and material men was considered, it was said: "The theory of the law giving to laborers and material men specific liens upon the property upon which their labor was performed or their materials used seems to be that, because the value of such property has been enhanced thereby, it is just that the property should be specifically charged with the sums expended thereon for those purposes. The reason of the law extends to expenditures on the property by subcontractors as well as by those who contract directly with the owner." And the cases of *Munger v. Lenroot*, 32 Wis. 544, and *Winslow v. Urquhart*, 39 Wis. 260, really rest upon this ground.

In this case the defendant *Baerlocher*, the owner of the lots, has received no benefit whatever from the material and labor in question, and the principal contractors were clearly not entitled to any compensation for them, nor to any lien on the lots, on that account. This case is not, we think, within the statute relied on, for the statute does not extend to the case where no building is erected or constructed and no benefit has passed to or been accepted by the lot owner. To apply the statute so as to extend its provisions to such a case as the present would, we think,

be giving it not merely a liberal, but a most latitudinarian and unreasonable, construction, and to mistake the incident as the subject of the lien for the principal thing which gives increased value to the ground upon which it has been erected, and would require the lot owner to answer through his property for the materials and labor that had entered into the building destroyed, from which he has not and could not derive any benefit, and would leave him without any remedy whatever against the principal contractor; making him practically an insurer of property over which he had not acquired control, and which remained at the risk of the contractors. If the second building shall be destroyed before its completion, it might thus transpire that the lot owner, according to the respondents' contention, might be wholly deprived of his lots without any fault of his own, and without having received any benefit or compensation therefor whatever.

Under a statute in Pennsylvania not materially different from the one in question, it has been held that the lien on the building is the principal thing, and the lien upon the land on which it is situated is an incident of the completion of the building, and that when the building is destroyed, by fire or otherwise, before completion, there can be no lien against the land on which it was attempted to erect it; that the lien shares the fate of the building; and that the reason for binding the land ceases with the destruction of the . building. *Presbyterian Church v. Stettler*, 26 Pa. St. 246; *Wigton and Brook's Appeal*, 28 Pa. St. 161; *Linden Steel Co. v. Rough Run Mfg. Co.* 158 Pa. St. 238, 246. This view is sustained by *Coddington v. Dry-Dock Co.* 31 N. J. Law, 477, 480, where it is said: "The act did not intend to give a lien on labor not performed on the land upon which it is to be a lien, nor on lumber before it was made land. . . . As soon as the lumber is converted into land, then the land is seized by the lien by reason of the building, and

the building because it is a part of the land; and from thence it follows that if the land and the building, by any chance, become separated, the lien is lost on both,— the land, because it has lost the building and the increased value thereby given to it; and the building, because separated from the land." Houck, Liens, §§ 203–205; *Schukraft v. Ruck,* 6 Daly, 1. A different view, however, has been taken of the question by the courts of other states having statutes more or less similar to our own. *Freeman v. Carson,* 27 Minn. 516; *Gaty v. Casey,* 15 Ill. 189; *Steigleman v. McBride,* 17 Ill. 300; *Clark & Co. v. Parker,* 58 Iowa, 509.

The statute (sec. 3315), as it existed before the amendments thereto noted in S. & B. Ann. Stats. sec. 3315, provided that "in no case shall the owner be compelled to pay a greater sum for or on account of such house, building, or other improvement than the price or sum stipulated in the original contract or agreement." It was then amended (ch. 312, Laws of 1885, and ch. 535, Laws of 1887) so that if the price shall be fixed unnecessarily low, with intent to defraud subcontractors, the basis of the owner's liability shall be a fair price for the labor and materials used in the building, instead of the contract price. The next enactment (ch. 333, Laws of 1889) repealed the above restriction upon the liability of the owner, and makes him absolutely liable to such contractors as comply with the requirements of the law, for the amount of their claims, *without regard to the contract price of the building or the sum the owner may be indebted to the contractor* when notice of the subcontractor's claim for a lien is served, or at any other time. *Hall v. Banks,* 79 Wis. 233; *Mallory v. La Crosse Abattoir Co.* 80 Wis. 174, 175. The operation of the amendment of 1889 seems to be confined to the question of the *amount* for which a subcontractor, material man, or laborer under him may have a lien against the building and premises of the

owner, and does not in any manner affect the question as
to what may or may not wholly defeat or deprive him of
any lien at all.

As already observed, it is very clear that the principal
contractors in this case would not be entitled to recover or
have a lien by reason of the partial construction of the
building destroyed, and if the case is such that the princi-
pal contractor is not entitled to a lien for any other reason
than that he has been paid in full, as in case of abandon-
ment of his contract or of destruction of the building be-
fore completion, the subcontractors under him, and their
material men and laborers, would not seem to be entitled
to any lien.   The law was so held in *Malbon v. Birney*, 11
Wis. 107, 110, where it was held that one who had fur-
nished lumber to a principal contractor, which he had used
in the construction of the building, and had voluntarily
abandoned his work, could not recover against the owner
as a subcontractor under such principal contractor by vir-
tue of the lien law, and it was said that " if Kennedy [the
contractor] could not have recovered on a *quantum meruit*
for his labor and on a *quantum valebant* for the materials,
the respondents [the material men] ought not to sustain
this action."   And it seems clear that the rule must be the
same where the building has been wholly destroyed before
completion.   That the rule in *Malbon v. Birney, supra,*
has not been affected by the amendment by ch. 333, Laws
of 1889, of sec. 3315, R. S., seems obvious from an inspec-
tion of its language, making it the duty of the principal
contractor to defend any action brought to enforce a lien
by any subcontractor or material man or laborer under
him at his own expense, and that "during the pendency of
such action the owner may withhold from the contractor
the amount of money for which such lien shall be filed,
and in case of judgment against the owner or his property
upon the lien, he shall be entitled to deduct from any

amount due from him to the contractor the amount of such judgment and costs, and if he shall have settled with the contractor in full, shall be entitled to recover back from the principal contractor any amount so paid by the owner for which the principal contractor was originally liable." The provision in question is plainly restricted to a case such as was before the court in *Mallory v. La Crosse Abattoir Co.* 80 Wis. 170, where the building had been completed, and where the controversy was as to the liability of the owner to pay, through his property, the sums due from the principal contractor to his subcontractors, material men, or laborers, although in excess of the contract price for erecting the building. Its entire scope is restricted to allowing the owner to deduct from the contract price due and unpaid by him to his contractor the amount of the judgment and costs recovered against the latter, and, *if he shall have settled* with the contractor in full, he is allowed to recover back from the principal contractor any amount so paid by him, for which such principal contractor was originally liable. We hold, therefore, that by reason of the destruction of the first building before completion the several claimants plaintiffs who are material men and laborers are not entitled to liens on the lots for materials or for work and labor used and expended on such building; that those who furnished materials and performed work and labor on the second building are entitled to liens therefor on that building, and upon the right, title, and interest of the owner, *Baerlocher*, therein.

2. There is no preponderance of evidence against the finding of the court adverse to the defense set up by the appellant to the claim of *Noyes & Co.*, and hence there is no ground for disturbing the finding on that subject.

3. The objection that the claim of *Noyes & Co.* for a lien was not seasonably filed is, we think, untenable. It was delivered in due form to the proper officer to be filed. His

failure to put his file mark on it and to make the docket entries on the docket of mechanics' liens within the prescribed six months for filing liens, will not defeat the claim. The statute provides for both *filing* and *docketing* the claim, and these are entirely different things. The law requires the *party* to file his claim for a lien, and the *clerk* is to docket it. R. S. secs. 3318, 3319. And sec. 3321 is that "any person having so *filed* such claim," etc. The rights of the claimant to a lien are secured when his claim therefor is delivered to and left with the clerk to be filed. The statute requires him to file it and to docket it. The first part of the section provides that within six months, etc., it "shall be filed *as hereinafter provided*," and in the latter part that "such claim for lien may be *filed* and *docketed* within such six months, notwithstanding the death of the owner of the property affected by it," etc.; and this is the "hereinafter provided," and satisfies the previous requirement of the section, for there is no other provision in the statute to which it can possibly apply. It certainly does not refer to docketing the claim. When the claimant has delivered his claim for a lien to the clerk and left it with him to be filed, he has done all he is required to do — all he possibly can do — to secure his rights, and he will not be prejudiced by the neglect of the clerk to perform in respect to it his duty as directed by the statute. Docketing the claim is not a prerequisite to securing the lien. *Smith v. Waggoner*, 50 Wis. 155; *Gorham v. Summers*, 25 Minn. 81; *People v. Bristol*, 35 Mich. 28; *Bishop v. Cook*, 13 Barb. 329; *Dodge v. Potter*, 18 Barb. 193.

*By the Court.*— The judgment of the circuit court is reversed, and the cause remanded with directions to enter judgment according to this opinion.