KENNEDY, Respondent, vs. SOUTH SHORE LUMBER COMPANY, imp., Appellant.

*February 1 — February 21, 1899.*

*Sale of logs: Joint employment of scaler: Right of one party to discharge: Damages: Liens.*

1. A contract for the sale of logs provided that they should be scaled by a scaler mutually agreed upon or, in default of such agreement, a scaler appointed by a certain third person, and that if the scale of any person selected under the contract to make such scale should prove unsatisfactory to either party, then such party should have the right to insist upon a change of scalers, and a new scaler should be appointed. Pursuant to the contract plaintiff was appointed as scaler by such third person and acted as such until the vendee, being dissatisfied, notified him to discontinue work. The vendors, however, declined to consent to a change, and under their direction plaintiff held himself in readiness for several months to scale the logs, but the vendee did not permit any logs to be scaled during

that time. *Held*, that plaintiff's right of action, if any, was not for wages earned, but for damages for breach of the contract of employment, and that the damages should be limited to the value of the time it would ordinarily have taken to scale the logs in the general course of business.

2. Under such contract of sale the vendee had the right to discharge plaintiff without the vendors' consent, either party having the right to insist upon a change of scalers when dissatisfied with one previously appointed, whether he was appointed by mutual agreement or by the third person mentioned.

3. A claim for damages for breach of a contract of employment is not a lienable claim under sec. 3329, R. S. 1878.

APPEAL from a judgment of the circuit court for Bayfield county: JOHN K. PARISH, Circuit Judge. *Reversed.*

Action in form to recover on a contract of employment to scale logs, and to secure a lien judgment, based on the following facts which were established by evidence on the trial:

John McAlpine, A. B. McDonell, and Thomas Irvine as parties of the first part, and the *South Shore Lumber Company* as party of the second part, all joined as defendants here, made a written contract by which the latter purchased of the former a quantity of saw logs, agreeing to pay a price therefor named in such contract, according to the measurement thereof to be made on the log deck of the purchaser's sawmill by a scaler mutually agreed upon, or, in default of such agreement, a scaler appointed by one Cochran. In respect to changing scalers in case of either party being dissatisfied with one previously appointed, the contract provided as follows: "If the scale of any person selected under this contract to make said scale shall prove unsatisfactory to either party, then such party shall have the right to insist upon a change of scalers, and a new scaler shall be appointed." The language in regard to the selection of a scaler by the mutual agent, Cochran, was as follows: "And in case of a failure of the parties hereto to agree upon such scaler,

then the scaler shall be designated by Judge Cochran of Ashland."

The latter clause of the contract became operative, resulting in the appointment of plaintiff by Cochran. Pursuant thereto, between the 12th day of June, 1896, and the 7th day of July thereafter, plaintiff actually worked, as defendant conceded on the trial, about eleven days. Plaintiff conceded payment in full for eight and one-half days' work, one half by each party, and also payment for one-half time by the first parties to the log sale contract, for the time till he consented to terminate his relations with the parties, October 4, 1896. July 7, 1896, the *South Shore Lumber Company* being dissatisfied with the plaintiff as scaler, declined to allow him to continue work, and duly notified him in writing to that effect. The situation as stated was brought home to the first parties. They declined to consent to changing scalers, and directed plaintiff to continue work and to hold himself in readiness to scale the logs whenever there were logs to be scaled. The result was that the *South Shore Lumber Company*, insisting upon their right to a change of scalers, did not saw any logs or permit any to be scaled under the contract, till after October 4, 1896. Plaintiff held himself in readiness to scale the logs during all such time. After October 4, 1896, the parties made provision for scaling the logs, and the work was completed during the fall, the amount, as it appears, being some less than 1,500,000 feet.

This action was brought in form to recover for ninety-seven days' work from the 12th day of June, 1896, to October 4, 1896, at $120 per month, less the amount theretofore paid plaintiff. The amount claimed to be due was $204 and interest from October 6, 1896. On the trial plaintiff testified that the $204 was for time between July 14 and October 4, 1896; that he did not perform any work during that period. Facts were established requisite to a lien judgment for work performed. At the close of the evidence defendant's counsel

conceded the evidence warranted a finding of $11.52 as due plaintiff for work on the logs, and on the theory that one of the joint employers alone could terminate their relations with the scaler if dissatisfied with him, moved the court to direct a verdict in plaintiff's favor for $11.52, and that it was a lienable claim on the lumber as prayed for in the complaint. The motion was overruled, the court holding that neither of the joint employers could discharge plaintiff without consent of the other, hence that he was entitled to full wages, at $120 per month, up to October 4, 1896, less what had been paid him. The court submitted the case to the jury, but in effect, by the charge, directed a verdict for plaintiff for $204 and interest, making in all $216.92, and that it was a lienable claim. Judgment was rendered accordingly, from which this appeal was taken.

For the appellant there was a brief by *Tomkins & Merrill*, and oral argument by *Geo. F. Merrill*.

For the respondent there was a brief by *Lamoreux & Shea*, and oral argument by *W. F. Shea*.

MARSHALL, J. Assuming the view of the learned trial court to be right, that plaintiff, under the terms of the log sale contract, became the employee of the parties thereto the same in all respects as if they had personally jointly employed him instead of his having been designated as scaler by the mutual agent, Cochran, and that neither of the joint employers, without consent of the other, could terminate the contract of employment,— and such is obviously true if the familiar principle applies that consent of parties to a contract is as essential to terminate it as to make it,— still that does not militate against the power of any party to a contract once made, to commit a breach of it and make himself liable in damages therefor, to be assessed according to familiar rules governing such a situation. If, according to the court's construction of the contract, it was not termi-

Kennedy vs. South Shore Lumber Co.

nated by the conduct of the *South Shore Lumber Company*, it was breached by such conduct. Thereafter plaintiff did not perform any work under the contract. He was not permitted to do so. His cause of action, if he had one, was not for wages earned for work done, but for damages for loss of opportunity to labor and earn wages. In assessing such damages, the limit was such damages as could reasonably have been considered to have been in contemplation by the parties, at the time of making the contract, as the probable result of the breach of it. No principle of law applicable to contracts is better settled than that. *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214; *Bradley v. C., M. & St. P. R. Co.* 94 Wis. 44. Applying that principle to the facts of this case, it is readily seen that the damages reasonably in contemplation of the parties at the making of the contract in the situation indicated, did not exceed the time it would ordinarily have taken to have scaled the logs in the general course of business. The idea that it included several months' time, waiting around, watching for an opportunity to do work that plaintiff was notified he would not be permitted to do, is quite novel, and cannot be sustained as good law. The learned court misconceived the rights of plaintiff under the circumstances, even upon the construction of the contract that was supposed to rule the case, in holding that plaintiff was entitled to wages for work under a contract instead of damages for not being permitted to work. That grew out of failing to distinguish between terminating a contract and committing a breach of it. The *South Shore Lumber Company* could not terminate the contract of hiring without the consent of the joint employer, if the principle applies to the situation stated before in this opinion, but either joint party could commit a breach of it, rendering both such parties liable in damages to plaintiff; and upon settlement between such joint employers, the one at fault would be chargeable with the loss.

Kennedy vs. South Shore Lumber Co.

It follows from what has been said that the judgment must be reversed in any event, as it clearly appears that the time it would probably have taken plaintiff to have done the work he was prevented from doing does not exceed twenty or thirty days.   Further, plaintiff was not entitled to a lien judgment except for the time he worked on the logs. Lienable claims under the statute do not include damages for breach of contract, but wages earned under contract of the kind of work mentioned in the statute.   The same rule applies to lienable claims on logs and lumber under sec. 3329, R. S. 1878, as on buildings under secs. 3314, 3315. *Siebrecht v. Hogan*, 99 Wis. 437.

It is further considered that the judgment must be reversed for misconstruction of the log sale contract on the subject of whether one of the joint employers possessed authority to discharge plaintiff without consent of the other. The learned trial court held that the express language of the contract, giving to each party the right to insist on a change of scalers, referred only to the scaler mutually agreed upon, and not to the one designated by Cochran.  The idea in the judicial mind seems to have been that however unsatisfactory to a party the scaler appointed by one method might be, such party was powerless to obtain any relief, while in case of a scaler appointed by another method such party could insist upon his discharge at any time in the event of his being unsatisfactory.   That construction is too unreasonable to be adopted if the language of the contract will reasonably admit of another that does not involve the infirmity suggested.   It is considered that it does admit of such other construction, or, to state it more accurately, that the plain, unmistakable meaning of the language used by the parties is that each party was given authority to insist upon a change of scalers when dissatisfied with one previously appointed, and without regard to the method of ap-

pointment. The language in that regard is general, as follows: " If the scale of *any person selected* under this contract to make said scale shall prove unsatisfactory to either party, then such party shall have the right to insist upon a change of scalers, and a new scaler shall be appointed." The language, considered by itself, or with its context, does not reasonably admit of an exception. If the parties intended to deprive themselves of the power to severally insist upon the discharge of a scaler designated by Cochran, and retain such power in case of one mutually agreed upon, it was very easy to have said so; but they did not so say. On the contrary they reserved, without exception, the power to severally insist upon a change of scalers, and when plaintiff accepted the appointment by Cochran he became a party to that arrangement. Hence when the *South Shore Lumber Company* notified him that his services were no longer wanted because as a scaler he was not satisfactory to such company, the contract of employment was, by its plain terms, terminated.

There are other matters which appear by the record proper for mention, though not necessarily in the case. It does not appear that any rate of wages was expressly agreed upon with plaintiff. For aught that appears, his compensation for the time he actually worked was limited to the reasonable value of his services according to the going wages for that kind of work. Cochran had no authority whatever to do more than merely to designate the scaler. That act brought plaintiff into contract relations with the parties to the log sale contract and entitled him to going wages for work performed while it continued, and damages for the breach of it on the same basis, unless diminished by wages he had, or reasonably might have, earned elsewhere. Of course, if Cochran agreed with plaintiff as to the amount of his wages, and that was consented to by the joint employers,

it was binding upon them; but he had no authority to do that by anything contained in the written contract. It is quite probable that on the evidence alone plaintiff was not entitled to a verdict at all, for he testified that the time he claimed wages for was between July 14th and October 4th, during which time he did not perform any labor, and before which he was rightfully discharged. But the complaint covers from June 12th to July 14th, and defendant's counsel admitted $11.52, due plaintiff for work performed during such time, and moved the court to direct a verdict accordingly. The denial of such motion under the circumstances was error, but this being a jury case, and there being no verdict upon which a judgment can be rendered, there must be a new trial in accordance with the uniform practice in such circumstances.

*By the Court.*— The judgment appealed from is reversed, and the cause remanded for a new trial.