Seeman vs. Biemann and others.

SEEMAN, Respondent, vs. BIEMANN and others, Respondents, and FARR and another, Appellants.

108    365
112    4394
112    4541
112    4542

*November 19 — December 7, 1900.*

(1) *Appeal: Review of findings.* (2-4) *Contracts: Reformation: Damages for breach: Condition precedent: Penalty or liquidated damages?* (5-11) *Building contracts: Liens of subcontractors: Default of principal contractor: Agency: Lienable claims.*

1. The conclusions of a trial court on questions of fact cannot be disturbed on appeal unless they are against the clear preponderance of the evidence.

2. To warrant a court in changing the language of a written contract so as to conform to the preceding verbal agreement between the parties, there must be clear and satisfactory evidence that an error in reducing such verbal agreement to writing occurred through a mutual mistake or a mistake on one side and fraud upon the other.

3. If it be stipulated in a contract that recoverable damages for a breach thereof shall be contingent upon a claim being made therefor within a specified time and in a particular way, such condition is controlling.

4. If by the literal sense of a contract, expressed in general language, recoverable damages for a particular breach thereof be stipulated and be greatly in excess of actual damages, and the latter be readily ascertainable by computation, by a well settled but arbitrary rule of judicial construction, so called, the court will say the parties intended what was reasonable, treat the stipulated amount as a penalty, and confine the recovery of the party damnified to such sum as will measure his actual loss according to the ordinary rules for assessing damages for breach of contract.

5. In an action to enforce a subcontractor's lien under the statutes of this state, the owner of the property affected is entitled to the benefit of all the defenses against the claim possessed by the principal contractor.

6. If a building contract stipulate that there shall be no liens filed upon the building under the lien laws of this state, a subcontractor will be held to be a party thereto and bound thereby.

7. An agreement in a building contract that the contract price shall in whole or in part be retained by the owner till all lienable claims be paid, or that it shall constitute a trust fund to pay them, recognizes the probability of there being such claims rather than stipulates that no liens shall be filed.

8. The fact that the principal contractor has not complied with the conditions of his contract so as to enable him to enforce a lien on the building, will not militate against the subcontractor enforcing such a lien ff the subject of the subcontractor's lien might in any event be lienable in favor of the principal contractor.

9. So long as a builder under a building contract keeps within the scope of his contract, as regards material and labor wrought into the building and the character of such building, he is deemed to be the accredited agent of the owner to incur indebtedness therefor, and the circumstance that the amount of such indebtedness exceeds the contract price of the building or is due to a subcontractor before the maturity of the principal contract, does not militate against said subcontractor enforcing his claim under the lien statutes.

10. Damages for breach of contract in the construction of a building, recoverable by a principal contractor or by a subcontractor, do not constitute a lienable claim.

11. The rule that there must be an improvement on land, satisfying the calls of the statute in that regard, in order that a lien may attach to such improvement and in connection therewith to the interest of the owner of the land upon which it is located, and that for want of such circumstance a principal contractor cannot have a lien upon the property, and that his subcontractor has no greater right, does not require a principal contractor to be so circumstanced that he can enforce a lien in order that his subcontractor may do so. The rule goes to the lienability of the claim, not to its enforcement.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge. *Modified and affirmed.*

Action to enforce subcontractors' and other liens upon property under ch. 143, Stats. 1898. The cause was tried by the court, and the findings, so far as material to this appeal, were as follows:

On March 12, 1897, *Otto Biemann, C. O. Koehler,* and *John Bruening,* as copartners, contracted in writing with defendant *William Farr* to furnish the materials and perform the carpenter and joiner work in the erection and construction of a building mentioned in the complaint. The contract re-

quired the roof to be completed April 3, 1897, and the whole house to be completed May 22, 1897, provided the work was not delayed by other contractors or by weather, strikes, or other unforeseen causes. The contract further provided that in the event of the work not being completed at the time agreed upon, the builders should forfeit the sum of $10 as liquidated damages for each day's delay after May 22, 1897. such sum to be deducted from the amount of the contract.

The builders operated under the name of Biemann & Co. The stipulated price for the material they agreed to furnish was $1,240. Upon the contract there was indorsed a bond which is in the following form:

"Know all men by these presents: That we, *O. Biemann, C. O. Koehler,* and *John Bruening,* as principals, and *Charles G. Forster* and *J. J. Jones,* as sureties, both of the city of Milwaukee, are held and firmly bound unto Anton Dohmen of the same place in the sum of twelve hundred and forty dollars, lawful money of the United States, to be paid to the said ——, his executors, administrators, or assigns, for which payments, well and truly to be made we bind ourselves, our and each of our heirs, executors, and administrators, jointly and severally, firmly by these presents.

"Seal with our seals, dated the eleventh day of March, 1897.

"The conditions of the above obligation are such that if the above-bounden *O. Biemann, C. O. Koehler,* and *John Bruening, Charles G. Forster,* their executors, administrators, or assigns, shall in all things stand to and abide by, and well and truly keep and perform, the covenants, conditions, and agreements in the within contract contained, on his part to be kept and performed, at the time and in the manner and form therein specified, and shall well and truly pay or cause to be paid all material used and all work and labor employed in the performance of the covenants of the within contract whenever the same shall become due and payable,

and shall save harmless said Anton Dohmen from any and all liens, suits, and damage, arising or caused by reason of the nonpayments of such work or material or any part thereof, then this obligation to be null and void, otherwise to remain in full force, virtue, and effect."

The bond was signed by the contractors, by *Charles G. Forster* and *J. J. Jones.*

The sureties on the bond intended, in signing it, to become sureties for the benefit of Anton Dohmen, according to the letter thereof.

At the time *Farr* made the contract with Biemann & Co. he made six other contracts for doing work upon the building mentioned, each of which specified that the building was to be completed by May 22, 1897, and that the contractor should forfeit $10 per day as liquidated damages for each day's delay.

The total amount of all the contracts was $5,000 and the value of the buildings and lands was less than $6,000.

The rental value of the completed building was $38 per month.

Biemann & Co. were delayed in commencing their work by other contractors for about twelve days.

They fully completed their work by about July 15, 1897.

The *Forster Lumber Company* furnished to Biemann & Co. building material of various kinds to the amount of $466.09, no part of which has been paid for except $200.

The *Forster Lumber Company* complied with all the conditions of the statute entitling it to a subcontractor's lien for the balance of the claim, to wit, $268.09, with interest thereon from July 3, 1897.

The plaintiff, *Gustav Seeman*, furnished building material to Biemann & Co. to be used and which was used in the construction of the building, to the amount of $45, which sum, with interest from July 7, 1897, at six per cent. per annum, is due the plaintiff.

Seeman vs. Biemann and others.

Plaintiff performed all the conditions of the statutes entitling him to a subcontractor's lien for the amount of his claim.

Defendant *Frank Moody*, as surviving member of Moody & Krueger Company, furnished to Biemann & Co. building material for use and which was used in the construction of the building, to the amount of $441.75. All the conditions of the statute were complied with, entitling *Moody* to a subcontractor's lien for the amount of his claim.

Defendant *John J. Jones* furnished Biemann & Co. building material and manufactured articles for use and which were used in the construction of the building, to the amount of $81.20. He performed all the conditions of the statutes entitling him to a subcontractor's lien for the amount of his claim.

The action, as to all the lien claimants, was commenced within the time required by law.

Biemann & Co. were delayed by bad weather and by defendant *Furr* and other contractors so that they are not chargeable with any breach of their contract in that the building was not finished earlier than July 15, 1897.

Judgment was ordered in accordance with the findings, there being sufficient findings other than those specially mentioned to cover all formal matters.

Before the commencement of this action *Moody* commenced an independent action to recover his claim. He did not answer in this action till after the case was tried, and he was then permitted to file the complaint in his action as his answer in this action.

Issues were made up in this action as to whether the bond was intended to secure Architect Dohmen or to secure the proprietor of the building, *Farr*. *Farr* endeavored to secure a reformation of the bond, claiming that it was intended by all parties to secure him. The issue in respect to

that claim was decided in favor of the bondsmen, as before indicated.

The contract with Biemann & Co. contained this provision which was not referred to in the findings:

"If by reason of fire, lightning, tornado, or other natural causes; riot, insurrection, or generally prevailing strikes affecting the delivery of material necessary to be used and causing a general cessation of business; or if by reason of neglect, delay, or default on the part of the owner, or any contractor employed by the owner, the contractor shall be unavoidably delayed or obstructed, then the time fixed herein for the completion of the work shall be extended for a period equivalent to the time lost by reason of any or all of said causes; but unless the contractor shall notify the architect in writing, in each instance, of his intention to claim an extension of time, within twenty-four hours from the time of the occurrence of the alleged cause of delay, he shall thereby waive all right to said extension. If the architect and contractor are unable to agree upon the duration of the extension, or as to whether any extension should be granted, the question shall be settled by arbitration, as provided for in article II. But, while the question is pending the work shall progress as usual and the contractor shall make no claim for extension by reason of the pending arbitration." There was no evidence indicating that any claim was made in writing under this provision of the contract.

Various exceptions were filed to the findings of fact and conclusions of law, sufficient to preserve for review the questions discussed in the opinion.

*Geo. L. Williams*, for the appellants, argued, among other things, that the court should have reformed the bond in accordance with the defendant's cross complaint and have held the sureties *Forster* and *Jones* liable on the same. *Ihrig v. Scott*, 5 Wash. 584; *Wadsworth v. School Dist.* 7 Wash. 485; *Sears v. Williams*, 9 Wash. 428; *Leonard v. Speidel*, 104 Mass.

356; *Montville v. Haughton*, 7 Conn. 543; *Wiser v. Blachly*, 1 Johns. Ch. 607; *Kincannon v. Carroll*, 9 Yerg. 11; *Armistead's Adm'r v. Bozman's Heirs*, 1 Ired. Eq. 117; *Nicholay v. Kay*, 6 Ark. 59; *Hale v. Russ*, 1 Me. 334. Any person for whose benefit a bond is given, and who is, according to the proper construction of the bond, to be primarily benefited, or who is one of the primary beneficiaries of such bond, can maintain an action thereon against the sureties for his benefit. *New York L. Ins. Co. v. Hamlin*, 100 Wis. 17, and cases there cited; *Huntington v. Fisher*, 27 Iowa, 276; *Baker v. Bryan*, 64 Iowa, 561; *Jordan v. Kavanaugh*, 63 Iowa, 152; *Parker v. Jeffery*, 26 Oreg. 186; *Hughes v. Oregon R. & N. Co.* 11 Oreg. 437.

For the respondent *Seeman* there was a brief by *Fiebing & Killilea;* for the respondent *Jones* there was a brief by *Charles H. Phillips;* for the respondent *Moody* there was a brief by *J. A. Eggen;* for the respondents *Forster Lumber Co.* and *Charles G. Forster* there were briefs by *Nath. Pereles & Sons;* and the cause was argued orally by *C. F. Hunter.*

MARSHALL, J. The principal question presented for adjudication is raised by exceptions to the findings of fact respecting the cause of action pleaded by the owner of the building against defendants *Jones* and *Forster* for a reformation of the bond indorsed upon the back of the building contract making it run to such owner instead of to his architect, Dohmen. The evidence upon which the conclusions of the trial court are based has been examined without disclosing any warrant for this court to say they are clearly against the preponderance of such evidence. Clear and satisfactory evidence of mutual mistake, or of mistake upon one side and fraud upon the other in reducing a contract to writing, is required to warrant changing such writing with a view to express the actual agreement of the parties. The direct evidence here is substantially all to the effect that the obligors

knew when they signed the bond that Dohmen was the obligee therein named. They were told that he wanted a bond from the builders and signed the paper upon a request to become bondsmen for him, as they understood it, and in a measure because of their acquaintance with and regard for him. *Forster* wrote the name of Dohmen in the bond as obligee, which leaves no room to doubt that he knew its import when he signed it and that he became a party thereto with full understanding that he thereby became obligated only to Dohmen. True, there is some reason to say the bondsmen must have known that the object of the bond, so far as the owner of the building and the contractor were concerned, was to secure the former; but that does not militate against the theory that they did not intend to become parties to effecting such purpose. If they did not sign the paper for the benefit of the owner of the building or perpetrate any fraud upon him, whereby he, in the exercise of ordinary care, was induced to accept such paper in the belief that it ran to him as obligee, it cannot be properly changed so as to carry out his purpose. There is no evidence to sustain fraud and no satisfactory evidence of mutual mistake.

The court, in failing to charge the contractors, Biemann & Co., with damages for delay in completing the building by the time named in the contract, must have entirely overlooked the provision thereof that "unless the contractor shall notify the architect in writing, in each instance, of his intention to claim an extension of time, within twenty-four hours from the time of the occurrence of the alleged cause of delay, he shall thereby waive all right to said extension." Parties have a right to make such a stipulation in a building contract, and if they do so they are bound by it the same as by any other part of their agreement. If a contractor agree in writing to construct a building without taking reasonable time therefor, or agree that relief from delays caused by unforeseen causes shall depend on claims being

made therefor in a particular manner and within a specified time, he must comply with such conditions or he will be held to have waived such relief.

The building was to have been completed by May 22, 1897. It was not finished till July 15, 1897. There was a delay of one month and twenty-three days. There was no evidence of any claims being made for allowances of time as provided in the contract, so the contractors were clearly liable to the appellant *Farr*, upon the proper rule for computing his damages under the agreement.

That brings us to the necessity of determining whether the parties agreed upon $10 a day as the amount to be allowed as damages for each day's delay, or whether that clause in the contract was intended as a mere security for the completion of the building by the time agreed upon, hence should be considered as a penalty and the recoverable damages be limited to such as proof shows *Farr* actually sustained.

The law is too well settled to permit any reasonable controversy in regard to it at this time, that where parties stipulate in their contract for damages in the event of a breach of it, using appropriate language to indicate that the damages are agreed upon in advance, and such damages are unreasonable considered as liquidated damages, the stipulated amount will be construed to be a mere forfeiture or penalty and the recoverable damages be limited to those actually sustained. While courts adhere to the doctrine that the intention of the parties must govern in regard to whether damages mentioned in their contract are liquidated, they uniformly take such liberties in regard to the matter, based on arbitrary rules of construction, so called, as may be necessary to effect judicial notions of equity between parties, guided of course by precedents that are considered to have the force of law, sometimes calling that a penalty which the parties call stipulated damages, and that which the parties

call a penalty stipulated damages, where otherwise an unconscionable advantage would be obtained by one person over another. The judicial power thus exercised cannot properly be justified under any ordinary rules of judicial construction. Such rules permit courts to go as far as possible to effect the intent of the parties where it is left obscure by their language so long as such intent can be read out of the contract without violating the rules of language or of law. But in determining whether an amount agreed upon as damages was intended as liquidated damages or as a penalty, rules of language are ignored and the expressed intent of parties is made to give way to the equity of the particular case, having due regard to precedents as before indicated. Here the damages are said by the parties to be agreed upon at $10 per day for each day's delay, to be deducted from the contract price, indicating about as clearly as language can that they intended that such damages should be considered as irrevocably stipulated damages; yet the uniform rule is that such circumstance does not absolutely control.

This court, in harmony with the weight of authority, early adopted the arbitrary rule that where damages may be readily computed and the stipulated damages, so called, are largely in excess of actual damages, the court will disregard what the parties say they intended, and presume that they intended what is fair and reasonable under the circumstances, however much that may violate their language. *Pierce v. Jung*, 10 Wis. 30; *Fitzpatrick v. Cottingham*, 14 Wis. 219. In *Berrinkott v. Traphagen*, 39 Wis. 219, there is found quoted with approval from 3 Parsons, Cont. 156, language to the effect that parties may contract for stipulated damages at their pleasure, but such damages only as the law says are liquidated according to the artificial rules which have been adopted to justify courts in saying what the parties intended are in fact to be regarded as such damages. The most significant of such rules is the one above referred

to.   Applying it to the case before us, the stipulation of $10 per day for delay must be held to be a penalty merely, and not necessarily recoverable to the whole amount.  The rental value of the property as found by the court was $38 per month.   That is the true measure of actual damages, since there were no special circumstances shown by the evidence, brought home to the knowledge of the contractor at the time of the making of the contract, from which we can say the damages which the parties then had in contemplation as the probable result of a breach of the contract as to time of completing the building were other than loss of use for the period of delay.   *Guetzkow Bros. Co. v. A. H. Andrews & Co.* 92 Wis. 214; *Kennedy v. South Shore L. Co.* 102 Wis. 284.

The rental value of the building is trifling in amount as compared with the stipulated damages, so called, of $10 per day.   There was, in the nature of the case, at the time the contract was made, no difficulty to be apprehended in arriving at the actual damages that might arise from mere delay in completing the building.   So we have the two elements recognized as controlling the language of parties respecting stipulated damages, first, the amount the parties say they agreed upon is grossly in excess of the actual damages sustained or that could have been reasonably apprehended at the time of making the contract; second, the damages actually sustained are readily ascertainable.

It follows that we must hold that the parties intended the $10 per day as a mere penalty to secure the performance of the contract, and limit the recoverable damages to such as were actually sustained, to wit, $38 per month for fifty-three days, or $67.13, with six per cent. interest thereon from the date the breach of the contract was complete, July 15, 1897.

The question is raised as to whether the amount adjudged to defendant *Frank Moody* is excessive, and it seems that such question must be answered in the affirmative, in regard to the following matters.

*Moody's* contract required him to furnish all the "mill work, except bathtub tops, sink tops, shelving, drawers, flour bins, and stairs," for $440. The evidence is practically all one way that certain closets were intended to be included in "mill work," which *Moody* neglected to furnish, and which were furnished by defendant *Jones* and included in the amount allowed to him at $42. *Moody* seems to have construed the contract as not including any part of the closets, except the doors thereto, but in the light of the testimony we must say that is wrong. The closets were clearly included in the term "mill work" and not excluded by any of the exceptions. How it occurred that the full amount of *Moody's* contract price was allowed to him, and the charges for closets which it in part included, as *Moody* himself understood, were allowed in full to *Jones*, does not clearly appear. The excuse given by *Moody* for not wholly fulfilling his agreement is that he was unable to obtain the necessary detail drawings to work by, from Biemann & Co. If that were so, *Moody's* recovery could only be justified as damages, and damages do not constitute a lienable claim. *Siebrecht v. Hogan*, 99 Wis. 437; *Kennedy v. South Shore L. Co., supra.* Our conclusion is that *Moody's* claim must be reduced by the amount allowed *Jones* for the closets, $42 and interest thereon at the rate of six per cent. per annum from June 30, 1897.

A claim is made that *Moody* delayed the work of Biemann & Co. some forty days; that the company's delay in large part is attributable to that fact; and that they should recoup in this action for the benefit of themselves and of *Farr* the damages which such misconduct caused. On the general proposition that *Farr* is entitled to insist upon all defenses which Biemann & Co. had to *Moody's* claim, there can be no controversy. It was the duty of Biemann & Co. to defend against the *Moody* claim in this action upon all the legitimate grounds they had and at their own expense. The statute so expressly provides. Sec. 3315, Stats. 1898.

*Moody* refused to come into this action till after it was fully tried, and the court then allowed him to file his complaint that had been served in an independent action against Biemann & Co. and *Farr* as his answer herein, and to recover according to his rights as shown by the testimony. That was objected to, and the permission should not have been granted except upon such terms as were necessary to save the rights of Biemann & Co. and of *Farr*. Such rights, however, may be fully protected and the error in that regard cured by allowing Biemann & Co. directly and *Farr* indirectly such damages as the evidence shows were caused to the former by *Moody's* fault.

A careful reading of the evidence leads to the conclusion that Biemann & Co. were delayed in their work, by *Moody's* breach of contract, for a considerable length of time. It is not deemed necessary here to review in detail the evidence bearing on the subject. Suffice it to say that the evidence has been examined with care and to our minds shows clearly that Biemann & Co.'s breach of contract, in that they did not finish the building till one month and twenty-three days after the time agreed upon, is accounted for to the extent of at least one month by *Moody's* failure to furnish the mill work as agreed upon, and that he should be charged, as damages, for the rental value of the building for that length of time, or $38, with interest thereon from the time of the breach.

It is claimed that none of the subcontractors' lien claims are lienable because their rights are referable to the rights of Biemann & Co., and that, as the company stipulated against incumbering the property by liens, the subcontractors must be held to have likewise stipulated. That claim is based upon the following provision of the contract: "It is understood and agreed that all money drawn on this contract shall be held in trust for the owner by the contractor, to be applied in payment of all claims for labor and ma-

terial which have already entered into the construction of
the building and for which a lien might be filed against the
premises, or for which the owner might be held responsible,.
and the owner hereby specially reserves the right to retain
all moneys due upon this contract until the contractor shall
furnish such evidence that all claims for labor and material,.
etc., which might be made against the owner for work em-
braced in this contract, for which a lien might be filed
against the premises, have been satisfied." The proposition
that the claim of the subcontractors is referable to the prin-
cipal contract, and that if the principal contractor is not
entitled in any event to a lien by reason of stipulating to
the contrary, his subcontractors are bound by such stipula-
tion, is well supported by authority. This court directly
passed upon the question in principle in *Siebrecht v. Hogan,*
99 Wis. 437. It was there said, in effect, that a subcontract-
or's lien cannot, to the prejudice of the proprietor of the
building, be extended beyond the scope of the principal
contract. The subcontractor's authority to bind the prin-
cipal depends upon the right of his principal to do so under
the same circumstances. To that extent only the proprietor
is deemed by force of the statute to have authorized the
principal contractor to indirectly bind his principal under
the lien laws of the state. The difficulty, however, with ap-
pellants' position is that the law does not fit the facts of
this case. There is no stipulation here against the filing of
liens upon the building. On the contrary, the contract ex-
pressly recognizes the probability of there being lienable
claims, and stipulates that the money paid to the contractor
shall be considered a trust fund for the discharge of such
claims. Similar clauses in building contracts have been
passed upon by courts, as conveying the very opposite idea
from that of waiving the benefits of the lien statutes. Jones,
Liens, § 1502.

A further claim is made that the liens were not enforce-

able since nothing was due the principal contractor except
upon architect's certificates of satisfactory performance of
the conditions of the contract, and the evidence does not
show that such certificates were given or were produced
upon the trial. We are unable to see how that is material.
A subcontractor's lien is not dependent under our statutes
upon whether there is anything due the principal contractor.
If in any event a claim would be lienable under the princi-
pal contract in favor of the contractor, it is lienable in favor
of his subcontractor, and the right in that regard cannot be
impaired by any default of the principal contractor.    It
would be a strange doctrine under our lien statutes to hold
that the neglect of the principal contractor to acquire the
right to recover for constructing a building where it has
actually been constructed and is in existence as an improve-
ment upon the proprietor's land, will defeat the right of a
subcontractor to look to the property for the payment of his
claim.

Appellants' counsel refer with confidence to *Goodman v.
Baerlocher*, 88 Wis. 287. The point there decided was that
the calls of the statute for a building must be satisfied as a
condition precedent to the existence of a lienable claim;
that by the terms of the statute a mechanic's or material-
man's lien can only be acquired on land or the interest of
the owner of a building in land, in the event of there being
a building thereon, in the construction of which such me-
chanic or materialman contributed labor or material as pro-
vided in the statute. In that view it was decided that where
there is no building by reason of one partially constructed
having been destroyed by fire there can be no lien either in
favor of a contractor or subcontractor. All that is said in
the opinion should be read with reference to the point so
decided. The reference to *Mallon v. Birney*, 11 Wis. 107,
where it was held that if there is nothing due the principal
contractor so he can recover, no recovery can be had by a

subcontractor, was not necessary to a decision of the case. It was not strictly appropriate to the point discussed because such point did not turn on whether a principal contractor can enforce a lien for a partially constructed building, nor upon whether a subcontractor can have a lienable claim where there is nothing due the principal contractor, but on whether a lien can be enforced *where there is no building* within the meaning of the statute. When the *Malbon Case* was decided valid subcontractor's liens could not exceed the amount due the principal contractor. Not so now. Under the present statute, if the principal contractor keep within the scope of his contract in respect to the nature of labor and character of material put into the building by subcontractors, in that regard he is the accredited agent of his principal to incur the indebtedness for such labor or material regardless of whether he thereby exceeds the contract price to him for the building or whether the time or conditions under which such contract price is payable are indirectly varied. The language in the *Goodman Case*, that where "the principal contractor is not entitled to a lien for any other reason than that he has been paid in full, the subcontractor under him and the materialmen and laborers would not seem to be entitled to any lien," is misleading so far as it conveys the idea that circumstances other than payment that will defeat a lien as against a contractor will defeat it as against his subcontractor. Of course where a claim is not lienable in favor of the principal contractor it is not lienable in favor of the subcontractor; but, the lienability of a claim being established, a subcontractor's right to enforce it is not dependent upon whether the owner of the building might defeat it if the claim were made by the principal contractor.

Appellants' counsel urge the point that the court should have held that the bond running to Dohmen was made for the benefit of *Farr*, and that *Jones* and *Forster* were liable,

upon the well-recognized principle that if a person make a contract with another for the benefit of a third person the latter may enforce it against such other. The difficulty with that is not with the law but with the facts. We are unable to come to the conclusion that the trial court erred in holding that the intent of *Jones* and *Forster* was solely to contract for the benefit of Dohmen. Such is the letter of the bond, and no reason is perceived for disturbing the decision of the court that the paper should be given effect accordingly. The case of *New York L. Ins. Co. v. Hamlin*, 100 Wis. 17, cited to support the contention that the bond, without reformation, should be regarded as a security for *Farr*, does not meet the situation. To render the case in point we would have to read into the bond in controversy an express agreement that *Farr* should have the right to maintain an action thereon against the sureties therein named, the same as if he were named as the obligor. There was such a stipulation in the bond involved in the cited case. We do not deem it necessary to further discuss the question, though counsel have cited to our attention many cases. None of them appears to be in point. When we reject, as we must, the premise counsel assumes, that the bond was given for the benefit of *Farr* though in terms it runs to Dohmen, all the authorities cited cease to have any bearing whatever on the controversy.

There are some other points discussed in the briefs of appellants' counsel. None of them seems to require any special mention in this opinion. All have been covered which in our view of the case can affect the judgment appealed from. The judgment as to plaintiff *Gustav Seeman*, and defendants *Forster Lumber Company, John J. Jones*, and *Charles G. Forster*, was correctly rendered and must be affirmed. The judgment as to defendant *Frank Moody* must be reduced by $80 and interest, in all $87.31, leaving the total amount of his recoverable claim and costs $415.45. *Otto*

*Biemann, John Bruening,* and *C. O. Koehler* should be credited with the amount of the correction of the judgment as to *Moody* and charged with $67.13 and interest from the time of the breach of the contract, July 15, 1897, to the date of the finding, as damages (*J. I. Case P. Works v. Niles & Scott Co.* 107 Wis. 9), in all $73.09, leaving a balance of $14.22, which should be deducted from the judgment awarded to the appellant against them, leaving such judgment to stand at $574.56, including costs.

*By the Court.*— The judgment of appellant as to *Biemann, Bruening,* and *Koehler* is reduced to $574.56. The judgment in favor of *Frank Moody* is reduced to $415.45. The judgment as a whole as so modified is affirmed. For the purpose of the taxation of attorneys' fees in this court, all of the lien claimants must be considered as one party and the appellants as one party (*Allis v. Meadow Spring D. Co.* 67 Wis. 17, 23) and no attorneys' fees be allowed to either party. Appellant is awarded judgment for clerk's fees and $25 for printing against respondent *Moody,* and judgment is awarded in favor of respondents *John J. Jones,* the *Forster Lumber Company, Gustav Seeman,* and *Charles G. Forster* for their disbursements for printing briefs. No other costs than as indicated are to be taxed in favor of any person interested in the appeal.