H. & M. HEATING COMPANY, INC., Appellant, v. ANDRAE and others, Respondents.

*April 11—May 9, 1967.*

4

For the appellant there were briefs by *Merten, Connell & Sisolak* and *James G. Sisolak,* all of Milwaukee, and oral argument by *James G. Sisolak.*

For the respondents Andrae there was a brief by *Niebler & Herro,* attorneys, and *Chester J. Niebler* of counsel, all of Milwaukee, and oral argument by *Chester J. Niebler.*

HEFFERNAN, J.

*Duty of subcontractor to owner.*

Under the Wisconsin statutes,[1] a subcontractor has a lien for his materials and labor directly on the property of the owner. He does not acquire that lien by subrogation to the lien rights of the general contract. Sec. 289.02 (5), Stats.,[2] specifically provides that it shall be the duty of the contractor to protect and defend the owner against a lien claim of a subcontractor; and if he fails to successfully defend the owner, he is obliged to make the owner whole in the amount claimed. It is thus apparent that our statutory scheme recognizes the fact that the principal contractor is the agent of the owner, *vis-a-vis,* a subcontractor. The builder or principal contractor is thus automatically a party adverse to a lien-claiming subcontractor. The contractual obligation to pay the subcontractor is the responsibility of the contractor, but the owner's property is the hostage for the payment.

[1] "289.02 Subcontractors', materialmen's and laborers' liens. (1) NOTICE TO OWNER, TO MATERIALMEN. Every person, other than the contractor who furnishes labor or materials in any of the cases enumerated in s. 289.01, shall have the lien and remedy provided by this chapter . . . ."

[2] "289.02 (5) CONTRACTORS TO DEFEND LIEN ACTIONS. Where a lien shall be filed under this chapter by any person other than the contractor, he shall defend any action thereon at his own expense, and during the pendency of such action the owner may withhold from the contractor the amount for which such lien shall be filed and sufficient to defray the costs of said action; and in case of judgment against the owner he may deduct from any amount due to the contractor the amount of such judgment, and if the judgment exceeds the amount so due, the owner may recover the difference from the contractor."

As a consequence, the owner can assert as defenses to a subcontractor's claim any defenses that the principal contractor might have against the subcontractor, but he cannot assert defenses that he, the owner, might have only against the principal contractor.

Because the subcontractor's lien is independently granted by statute and is not dependent on the general contractor's lien:

". . . the fact that the principal contractor has not complied with the conditions of his contract so as to enable him to enforce a lien on the building will not militate against the subcontractor enforcing such a lien if the subject of the subcontractor's lien might in any event be lienable in favor of the principal contractor." *W. H. Pipkorn Co. v. Tratnik* (1915), 161 Wis. 91, 95, 152 N. W. 141, 16 A. L. R. 975; *Taylor v. Dall Lead & Zinc Co.* (1907), 131 Wis. 348, 355, 111 N. W. 490.

In *Seeman v. Biemann* (1900), 108 Wis. 365, 379, 84 N. W. 490, this court noted:

"A subcontractor's lien is not dependent under our statutes upon whether there is anything due the principal contractor. If in any event a claim would be lienable under the principal contract in favor of the contractor, it is lienable in favor of his subcontractor, and the right in that regard cannot be impaired by any default of the principal contractor."

The Wisconsin court, over the years, has taken the position that the principal contractor is the owner's agent for the purpose of securing materials and subcontracted services; hence, the defaults of the contractor are in no way chargeable to the subcontractor. We said in *Pipkorn, supra,* page 93:

"The principal contractor is the agent of the owner . . . The owner consents that the principal contractor may do what is necessary to carry out the principal con-

tract and makes his property liable therefor in accordance with the statute, which becomes a part of the contract."

The rule is well recognized that:

". . . the failure of the principal contractor . . . does not of itself defeat the right of the subcontractor, workman, or materialman to a mechanic's lien." 57 C. J. S., Mechanics' Liens, p. 616, sec. 112.

The same encyclopedia cites the *Pipkorn Case, supra,* for the rule:

". . . that a subcontractor or materialman may be entitled to a lien even though, owing to the contractor's default, the improvement is worthless." 57 C. J. S., Mechanics' Liens, p. 617, sec. 112; accord 36 Am. Jur., Mechanic's Liens, p. 40, sec. 38.

2 Jones, Liens (3d ed.), p. 521, sec. 1304, points out that:

"Under statutes which give to subcontractors a direct lien, the amount for which the property may be charged is not limited by the amount that may be due from the owner to the contractor, nor does it in any way depend upon the state of the account between them. It is sufficient that the liens are created through the owner's contract, from which his consent is implied."

The salutary effect of these rules is to preserve the integrity of a subcontractor's lien and prevent the security interest afforded therein from being eroded by claims against the general contractor accruing to the owner through no fault of the subcontractor. The subcontractor's right to look to the owner's property for security against the contractor's failure to pay him should not be conditioned on the contractor's faultless performance of the main contract. His only duty in the three-cornered contractual setup is to faithfully perform his own con-

tract. The only defenses to an action for the foreclosure of his lien are the defenses available to the general contractor.

It is thus clear that Andrae, the owner, can assert the same defenses against the plaintiff, H. & M., that Wilde could, *i.e.*, that it failed to perform its subcontract. However, Andrae cannot reduce the claim of H. & M. as the result of Wilde's default in the principal contract with him as the owner. He can reduce the liability of the property to the subcontractor's claim by the amount of damages attributable to any breach of the plaintiff's contract with Wilde that he or Wilde can establish.

Thus the question before the trial court and this court on appeal is whether the subcontractor discharged his obligation to Wilde.

### Did H. & M. perform its subcontract with Wilde?

The record abounds in evidence of Andrae's dissatisfaction with his heating system; and though that dissatisfaction be justified, it does not necessarily follow that the infirmities or defects of the system were the result of any breach of H. & M.'s contract with Wilde. Rather, there is evidence of the satisfactory completion of the work contracted for. H. & M.'s vice-president, Harry L. Mushall, testified that H. & M. performed its contract exactly according to the contract specifications. Wilde himself testified that the system installed in the Andrae home was the one agreed upon in the contract as orally amended, that these amendments were specifically agreeable to Andrae, and that the installation was correct.

Mushall testified that the Hart & Crouse oil-fired boiler complied with the contract with Wilde and Andrae knew that the boiler would be a Hart & Crouse and specifically approved of it before installation.

While the domestic coil failed to produce an adequate supply of hot water, it is undisputed that Andrae initiated the request for it in lieu of an ordinary water heater.

Much is made of the unusual and, perhaps, inefficient location of the boiler. In this case the boiler could not be placed next to the existing chimney because Andrae wanted additional room at that location so he could have the type of door that would permit him to bring his boat into the basement. The location of the boiler was discussed by Wilde and Andrae, and while there is some conflicting evidence of whether Andrae directed the location of the boiler, it was conceded by him that he approved of its location. The important point is, however, that Wilde, the principal contractor, directed H. & M., the subcontractor, where to place the boiler. The subcontractor in locating the boiler was expressly within the terms of his contract.

A prefabricated chimney was necessary at the new boiler location and, since the plans had not contemplated a chimney at that point, it was run through a closet. The evidence is undisputed that Wilde proposed the use of a prefabricated chimney and that, in view of the boiler location directed by Wilde, there was only one place for the chimney to go. Wilde actually assisted in the installation of it. Furthermore, Andrae approved of the installation of the prefabricated stack, and Haselow, Andrae's heating expert, testified that the location of the boiler, under the circumstances, was reasonable, as was the installation of the prefabricated stack. The question of the use and location of the stack was a decision made by Wilde and Andrae, not the subcontractor.

A serious defect in the heating system existed because the water used to heat the floor was too hot. It was agreed by all the witnesses that a lower water temperature was needed for the floor heating than for the baseboard heating. The high temperature resulted in

discomfort and caused the floor tiling to soften and show pockmarks and excessive wear. There was ample evidence to show that a two-pump system was desirable so water could be utilized at different temperatures, but it was equally clear that what Wilde specified in his contract with H. & M. was the one-pump system. While it had the inherent drawback of making it difficult to control the water temperature at the optimum, it was less expensive. Moreover, it was the system that H. & M. contracted to provide, and it is the system that was provided. It was not the duty of H. & M. to provide the best system available. Its duty was to furnish the system specified. If the heating system was inadequate, it was the duty of the contractor to have taken proper steps to apprise the owner of what he could expect from the selected system. H. & M. was not in privity with the owner and had no duty whatsoever to determine what kind of a system should be installed. There was also testimony by the plaintiff that, by controlling the amount of water that flowed into the floor coils, it was possible to adjust the floor temperatures within reasonable limits. The system as installed could be made to operate in this respect as desired, and H. & M.'s vice-president had done so at Andrae's request.

A great deal is made of the fact that a paint-can cover was used to support the chimney from the boiler. However, there is no proof that such a use was not functionally adequate and, more importantly, there was undisputed evidence that H. & M. intended to replace the can cover with a permanent type of support, but Andrae told H. & M. that he would take care of it himself and the heating contractor did not need to.

There is no evidence in the record that the plaintiff in any way breached any of the terms of his contract with Wilde. The evidence establishes that the plaintiff complied with all of the terms of his contract. Wilde himself testified that the plaintiff had fulfilled his con-

tract and that his installation was correct. Andrae complained, and his expert witnesses agreed, that the boiler and the prefabricated chimney installed by the plaintiff combined to create back draft and soot problems, but there is no evidence to link this problem with any faulty workmanship on the part of the plaintiff. The problem was caused by a combination of the choice of boiler, the installation of a prefabricated chimney, and the actual location of the chimney. None of these items was within the control or responsibility of the plaintiff. To the contrary, they were admittedly within the control and responsibility of Wilde and Andrae.

While the heating plant might well have been inadequate for its intended purpose, this was in no way the result of H. & M.'s failure to perform its contract or to do, in general, a workmanlike job. To the extent that the trial court held that H. & M.'s performance was defective or unworkmanlike, we conclude that such a finding is contrary to the great weight and clear preponderance of the evidence. The trial court's conclusion that H. & M. is directly responsible to Andrae for any defects in the general plan of the heating system we deem to be an erroneous conclusion of law, by which we are not bound on this appeal. *Pederson v. First Nat. Bank* (1966), 31 Wis. (2d) 648, 654, 143 N. W. (2d) 425; *Vogt, Inc., v. International Brotherhood* (1955–1956), 270 Wis. 315, 321i, 71 N. W. (2d) 359, 74 N. W. (2d) 749. It was error for the trial court to hold that H. & M. was responsible for the allegedly defective heating system. The judgment must therefore be reversed.

*Should plaintiff be awarded costs?*

The plaintiff argues that costs should be awarded as a matter of right in lien foreclosure cases and points out that sec. 271.01 (1), Stats., provides:

"271.01 **Costs allowed to plaintiff.** (1) Except as otherwise provided in this chapter, costs shall be allowed of course to the plaintiff upon a recovery."

However, he fails to note that sec. 271.02 (2), Stats., provides:

"271.02 **Costs limited, discretionary** (2) In equitable actions and special proceedings costs may be allowed or not to any party, in whole or in part, in the discretion of the court, and in any such case the court may award to the successful party such costs (exclusive of disbursements) not exceeding $100, as the court deems reasonable and just, in view of the nature of the case and the work involved. This subsection refers only to such costs and fees as may be taxed by the authority of the statutes, independent of any contract of the parties upon the subject, which contract shall apply unless the court finds that the provisions thereof are inequitable or unjust."

As noted above, a mechanic's lien foreclosure action is an equitable proceeding. As such it has always been held to be subject to the statute placing the question of allowing costs within the discretion of the trial court. *Charles v. Godfrey* (1905), 125 Wis. 594, 104 N. W. 814; *Boesen v. Preston* (reported sub nom. Peterson) (1907), 130 Wis. 418, 110 N. W. 208; *Rustles v. Christensen* (1932), 207 Wis. 326, 241 N. W. 635.

However, the trial court's refusal to allow the plaintiff his costs must necessarily have been influenced by its decision that the plaintiff was equally responsible for the installation of a defective heating system and was, hence, a partially unsuccessful party. Since the statute confers discretion in this matter to the trial court and since the trial court had no opportunity to exercise its judgment in light of this court's disposition of the plaintiff's claim, the cause is remanded to the trial court for its determination of this question.

*Should plaintiff be awarded interest on his claim?*

This court summarized the rules applicable to the allowance of interest on damages in *Maslow Cooperage Corp. v. Weeks Pickle Co.* (1955), 270 Wis. 179, 192, 70 N. W. (2d) 577:

"The general rule is that in the absence of agreement to the contrary, liquidated damages bear interest, whereas unliquidated damages do not. 47 C. J. S., Interest, p. 28, sec. 19a; *Beck Investment Co. v. Ganser* (1951), 259 Wis. 69, 72, 47 N. W. (2d) 490. In order to recover interest there must be a fixed and determinate amount which could have been tendered and interest thereby stopped; the amount of the claim must be known and determined, or readily determinable. 47 C. J. S., Interest, p. 30, sec. 19b. Ordinarily, where the amount of a demand is sufficiently certain to justify the allowance of interest thereof, the existence of a setoff, counterclaim, or cross-claim which is unliquidated will not prevent the recovery of interest on the balance of the demand found due from the time it became due. 47 C. J. S., Interest, p. 31, sec. 19b. See also Anno. 3 A. L. R. 809." See also *California Wine Asso. v. Wisconsin Liquor Co.* (1963), 20 Wis. (2d) 110, 121 N. W. (2d) 308; *Smith v. Atco Co.* (1959), 6 Wis. (2d) 371, 94 N. W. (2d) 697, 74 A. L. R. (2d) 1095.

The plaintiff's contract with Wilde provided:

"Payment to be made as follows: 75% payable when material delivered on job site and job roughed in: total balance due upon completion of work. 6% interest charged on past due accounts."

There is no dispute about the total amount due the plaintiff for his work on the contract. The total adjusted sum was $1,507. Likewise, there is no dispute that the plaintiff completed its work on September 20, 1963. Accordingly, the judgment should allow plaintiff interest against Wilde from September 20, 1963.

*Is plaintiff entitled to a judgment of foreclosure?*

The plaintiff concedes that, unless he is found on appeal to have been entitled to the full amount of his claim against the defendant, Wilde, he would not be entitled to foreclose his lien, because the funds available with the clerk of court are sufficient to satisfy his lien in the amount found by the trial court. This court, however, determines that he is entitled to the full amount of his claim against Wilde and, therefore, if such additional funds are not forthcoming, he is entitled to foreclose his lien. Ordering a foreclosure sale, however, is not the function of this court, but rather is a determination to be made by the trial court on remand in light of the facts and circumstances as they shall then appear.

## Costs on Appeal.

This court having left the assessment of trial costs and the imposition of a foreclosure lien to the sound discretion of the trial court, the immediate effect of this decision is to increase the respondent Wilde's liability to the appellant H. & M. by reversing that part of the trial court's decision which allowed H. & M. to recover only half of its claim. For this reason, as well as for the reason that Wilde has failed to submit his cause by brief and oral argument, as required by the rules, to this court, we assess the costs of this appeal only against the respondent Wilde.

*By the Court.*—Judgment reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.