472 P.2d 724 (1970)
T. K. KOBAYASHI, W. W. Kraxberger Construction Co., Inc., and Rocky Mountain Prestress, Inc., Plaintiffs in Error,
v.
MEEHLEIS STEEL CO., Defendant in Error.
No. 70-224. (Supreme Court No. 23588.)
Colorado Court of Appeals, Div. II.
June 30, 1970.
As Corrected July 7, 1970.
*725 Grant, Shafroth, Toll & McHendrie, Donald B. Gentry, Denver, for plaintiffs in error.
Fuller & Evans, Mackintosh Brown, Denver, for defendant in error.
Selected for Official Publication.
DUFFORD, Judge.
This case was originally filed in the Supreme Court of the State of Colorado and was subsequently transferred to the Court of Appeals under the authority vested in the Supreme Court.
This case was tried below on stipulated facts from which the trial court concluded that Meehleis Steel Co. possessed a valid mechanic's lien against the Fillmore Medical Building. The trial court entered a judgment of foreclosure of this lien against the building.
The building had been constructed by W. W. Kraxberger Construction Co., Inc., as the general contractor for the building owner, T. K. Kobayashi. The remaining party to this appeal, Rocky Mountain Prestress, Inc., is a concrete prestressing and precasting firm that had contracted with Kraxberger Construction to deliver the precast and prestressed concrete components which were to be used in the Fillmore Medical Building. Not a party to *726 this appeal is Gaystone Products, Inc., which had entered into an agreement with Rocky Mountain Prestress, under the terms of which Gaystone was to construct 96 precast structural columns to be used in the Fillmore Medical Building. This work was to be done by Gaystone at its own plant site, and on the completion of the columns they were to be delivered to the jobsite by Rocky Mountain Prestress, and it was to be Rocky Mountain Prestress' obligation to incorporate the columns into the building structure. It is uncontroverted that Gaystone's agreement with Rocky Mountain Prestress required that Gaystone perform its work in accordance with the plans and specifications for the Fillmore Medical Building. The parties have also agreed that Meehleis, in good faith and at the instance and request of Gaystone and on the credit of the Fillmore Medical Building and the real property whereon it was constructed, agreed to furnish the fabricated steel products which were to be incorporated by Gaystone into the cement columns which were to be precast and prestressed at Gaystone's plant site. All parties agree that the steel products delivered by Meehleis to Gaystone were cut and bent according to the plans and specifications for the Fillmore Medical Building.
Although the steel fabrication work performed by Meehleis met contract requirements, the cement precasting work performed by Gaystone was not satisfactory, and the building architects, through the general contractor Kraxberger Construction, required Rocky Mountain Prestress to improve the quality of Gaystone's work. Gaystone, at the direction of Rocky Mountain Prestress, the architects and Kraxberger, did make changes in its fabrication procedures at its plant site and also went to the jobsite to make some repairs on the columns which had already been delivered to Rocky Mountain Prestress and installed by it. However, much of Gaystone's work was ultimately rejected by the architects, and as a result only 45 of the 96 columns which were to have been fabricated by Gaystone were ultimately included in the building construction.
On these facts the building owner, T. K. Kobayashi; the general contractor, W. W. Kraxberger Construction Co.; and the subcontractor for the precast cement work, Rocky Mountain Prestress, ask that we reverse the judgment of the trial court. They submit essentially two arguments for reversal. First, it is contended that the material for which Meehleis claims a lien against the Fillmore Medical Building was not furnished at the instance and request of any person having charge of the construction of that building or any part of it, as required by the terms of our general mechanic's lien law. Secondly, it is urged that because Gaystone failed in its performance of its work with the result that not all of Meehleis' steel products were utilized in the Fillmore Medical Building Meehleis cannot claim a lien equal to the value of all the steel products it furnished to Gaystone.

1. THE RIGHT TO A LIEN
Meehleis' right to a lien against the Fillmore Medical Building and its land site must rest upon the provisions of C.R.S.1963, 86-3-1(1) as such statute existed prior to its amendment during the year 1965. The essential provisions of that statute are:
"Mechanics, materialmen, * * * subcontractors, builders, and all persons of every class performing labor upon or furnishing materials to be used in the construction, * * * in part, of any building * * * shall have a lien upon the property * * * for which they have furnished materials * * * whether at the instance of the owner, or any other person acting by his authority or under him, as agent, contractor, or otherwise, for the work or labor done * * * or materials furnished * * * whether done or furnished or rendered at the instance of the owner of the building * * * or his agent; and every contractor * * * subcontractor, *727 builder, agent, or other person having charge of the construction * * * in part, of any building * * * shall be held to be the agent of the owner for the purposes of this article." (Emphasis supplied)
In view of the fact that the principal construction contract between Kobayashi and Kraxberger Construction, or a memorandum thereof, was not filed with the appropriate County Clerk and Recorder for the purpose of limiting the owner's liability, C.R.S.1963, 86-3-1(3) as it read prior to its amendment in 1969 is also material to this case. Particularly significant is the following language from such statutory subsection:
"* * * In case such contract is not filed, the labor done and materials furnished by all persons before such contract or memorandum is filed, shall be deemed to have been done and furnished at the personal instance of the owner, and they shall have a lien for the value thereof."
Approaching § 86-3-1(1) for the purpose of legal construction insofar as determining classes of persons for whose benefit a lien is conferred by its terms, there are two statutory interpretative principles by which we must be guided. The first of these is that the law was designed for the benefit and protection of lien claimants and should be construed in favor of the claimant. 3190 Corporation v. Gould, 163 Colo. 356, 431 P.2d 466; Darien v. Hudson, 134 Colo. 213, 302 P.2d 519. Secondly, we must retain an awareness that the purpose of the mechanic's lien statute is to permit a lien upon premises where benefit has been received by the owner and where the value or condition of the property has been increased or improved by reason of furnishing of labor and materials. To a large extent the underlying rationale and principle upon which the mechanic's lien is conferred by statute is to preclude unjust enrichment. See 36 Am.Jur., Mechanic's Liens, § 4.
In connection with their first argument the appellants primarily urge that a concept of "remoteness" bars Meehleis' lien. They assert that in order to be a statutory agent of the owner a person must be in charge of construction of the building or of a part thereof at the actual jobsite and cannot perform his construction at a point which is physically remote to the jobsite area. In their view, persons such as Gaystone who construct building components away from the jobsite are not statutory agents because of such fact. They also submit that contractually Gaystone as a "sub-subcontractor" was too remote in the contract sense to be a statutory agent for the owner, and that Meehleis was nothing more than a materialman to a materialman. For such reason also they ask that Meehleis' lien be denied.
There is no express wording within our general lien statute which requires that a building subcontractor must be physically present at the actual jobsite of the structure in order to constitute an owner's statutory agent for the purpose of the lien law. We also note that no wording on this point was added to the subsequent amendment to this statute by our legislature thereby indicating a legislative desire that such a requirement be instilled in the statute. 1965 Perm.Supp., C.R.S.1963, 86-3-1.
In view of the rules of statutory construction which we have set forth above, we see no basis on which we could or should imply the interpretation urged by appellants. To the contrary, under the wording of § 86-3-1(1) and § 86-3-1(3) as they existed at the time Meehleis' lien arose and as they now exist, it is our opinion that the essential feature as to who constitutes a statutory agent is that a given person construct a definite, substantial part of the work of improvement in accord with the plans and specifications of the contract for such work, and not that he enter upon the jobsite and do the construction there. In this case the steel products were furnished to one who admittedly was engaged *728 in the construction of significant components of the building, which components, if acceptable, were destined for incorporation into the building structure. The fact that Gaystone, the party constructing the building components away from the jobsite, was in effect a sub-subcontractor is without significance in this jurisdiction since our Supreme Court has previously indicated that as a matter of statutory construction such a person would be a subcontractor within the meaning of our mechanic's lien law. Cf. South-Way Construction Co. v. Adams City Service, Colo., 458 P.2d 250. Consequently, we conclude that any person who agrees to perform a substantial, specified portion of the work of construction of a given building which is the subject of a general construction contract in accordance with the plans and specifications of such contract is a subcontractor or an owner's statutory agent within the meaning of our general mechanic's lien law. This applies even though he does not undertake to incorporate such portion of the projected structure into the building itself.
It necessarily follows that a party furnishing labor or materials in accordance with an agreement with such subcontractor or statutory agent is entitled to a mechanic's lien under our statute if such materials are required by and meet the standards imposed by the general construction contract. Our rule here is supported by decisions of other authorities which have met this question in construing statutes which, insofar as the issues here are concerned, are largely identical to our own. Bumb v. Petersmith Controls, Inc., 9 Cir., 377 F.2d 817; Theisen v. County of Los Angeles, 54 Cal.2d 170, 5 Cal.Rptr. 161, 352 P.2d 529; Holt & Bugbee Co. v. City of Melrose, 311 Mass. 424, 41 N.E.2d 562; Timber Structures v. C.W.S. Grinding & Machine Works, 191 Or. 231, 229 P.2d 623.

2. EXTENT OF LIEN
We do not agree with appellants' second contention that if Meehleis is entitled to a lien at all it is entitled to one which is equal only to the value of that portion of its steel products which were actually used in the Fillmore Medical Building. The cases cited by the appellants in support of their position on this question are not in point. In Brannan Sand & Gravel Co. v. Santa Fe Land & Improvement Co., 138 Colo. 314, 332 P.2d 892, a claim for improvements was made against land not owned by the defendant. In Bishop v. Moore, 137 Colo. 263, 323 P.2d 897, there was a breach of contract by the lien claimant, and consequently there was no indebtedness. Here it was stipulated that the value of the steel that Meehleis delivered to Gaystone was $1,840, and that this was the amount of Gaystone's indebtedness to Meehleis. There is no claim made that the steel or work furnished by Meehleis was deficient in any way. It has been previously held in this jurisdiction that it is not necessary for the lien claimant to show that the materials delivered were actually used in the building against which the lien is sought. Atkinson v. Colorado Title & Trust Co., 59 Colo. 528, 151 P. 457; B. F. Salzer Lumber Co. v. Lindenmeier, 54 Colo. 491, 131 P. 442; Small v. Foley, 8 Colo.App. 435, 47 P. 64. The fact that Gaystone defaulted in its contract performance does not defeat the lien of Meehleis. It has been previously determined that the lien conferred by our general mechanic's lien statute is a direct lien. Armour & Co. of Delaware v. McPhee & McGinnity Co., 85 Colo. 262, 275 P. 12. Where the statutory lien conferred is direct in its nature, the law is that one asserting an otherwise valid mechanic's lien will not have his lien defeated by the default of another party, even though such other party's default renders worthless the improvements for which the lien is claimed. H. & M. Heating Co. v. Andrae, 35 Wis.2d 1, 150 N.W.2d 379; 57 C.J.S. Mechanics' Liens § 112.
The judgment is affirmed.
COYTE and PIERCE, JJ., concur.