### In re JAEGER.

(District Court, W. D. Wisconsin.  September 27, 1921.)

1. Sales &#x29E0;465—Validity of conditional sale contract not affected by informality of record.

Under St. Wis. 1921, §§ 1684u1–1684u31, governing conditional sales where the seller files a complete contract, containing the information required by the statute, his rights are not affected by any informality or irregularity in recording or indexing the same.

2. Sales &#x29E0;465—Conditional sale contract held eligible for record.

Conditional Sales Act Wis. § 10 (St. 1921, § 1684u10), providing that the officer with whom a conditional sale contract is filed shall keep a book

in which he shall enter, infer alia, "the price named in the contract," does not require the contract to name a price, and a contract for sale of farm machinery, in which prices are not given, but providing that they shall be the prices established by the seller for the next spring trade, *held* eligible for record.

In Bankruptcy. In the matter of John P. Jaeger, bankrupt. On review of order of referee denying petition of the John Deere Plow Company for reclamation of property. Reversed.

Decree affirmed 284 Fed. 136.

Brayton E. Smith, of Wausau, Wis., for trustee.

Churchill, Bennett & Churchill, of Milwaukee, Wis., for petitioner John Deere Plow Co.

LUSE, District Judge. On petition for review of an order of the referee, dated July 21, 1921, denying the petition of the John Deere Plow Company for the surrender of certain property in the possession of the trustee.

The bankrupt, Jaeger, succeeded to the rights in the property, and under the contract hereinafter mentioned, of the partnership of Spiegelberg, Schmidt & Jaeger, who in turn succeeded to the rights of the partnership of Spiegelberg & Schmidt, who in turn succeeded to the rights of the partnership of Speigelberg & Laatsch. The last-named partnership entered into a contract with the John Deere Plow Company, under date of October 16, 1919, whereby said partnership agreed to purchase a large quantity of farm machinery, and whereby it was expressly provided that the title to and ownership of all goods which might be shipped under it should be and remain in the plow company until full payment for all goods was made. No price for the goods contracted was specified in the contract, which contained this provision:

"Goods specified in this contract are sold without prices, with the understanding that said goods shall be invoiced at the regular wholesale dealers' prices established by the plow company for the 1920 spring trade."

About November 1, 1919, the plow company established its regular wholesale dealers' prices for the 1920 spring trade, and evidenced such prices by a price list, which was circulated generally among wholesale dealers, including the buyers under the contract in question, on or about said date. December 5, 1919, Messrs. Spiegelberg & Schmidt, having succeeded to the rights of Messrs. Spiegelberg & Laatsch, wrote the plow company as follows:

"We, the undersigned, hereby assume the contract, with all specifications, terms, and conditions as written under date of October 16, 1919, by your Mr. J. S. Hensel, with Spiegelberg & Laatsch, and agree to receive all goods that may be shipped to us under said contract, and to settle for same under the terms and conditions as provided therein."

A copy of the contract was filed in the office of the clerk of the proper village, but not until October 21, 1920, the plow company filing with it the letter of Spiegelberg & Schmidt above quoted; but the price list issued as above stated was never filed with the contract. The

filing occurred more than four months prior to the adjudication of the said Jaeger as a bankrupt.

The village clerk indexed the contract in question in an index to chattel mortgages, failing to index same in a separate book, as required by St. Wis. § 1684u10; indexed the names of the buyers under the heading of mortgagor, and the seller under the heading of mortgagee; failed to note the hour of filing, or to describe the goods, the price named in the contract, the amount due, or the date of cancellation. The referee held that the failure of the village clerk to keep a separate book and make the proper entries under the section of the Statutes of Wisconsin above referred to did not affect the rights of the parties, but the failure to file a price list of the goods in controversy was fatal, in that such price list was a part of the contract, and without the same the contract was incomplete, and that the provisions of section 1684u5 were applicable, making conditional sales contracts void unless filed as required by chapter 78u of the Wisconsin Statutes, as to any purchaser from or creditor of the buyer "who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them."

[1] I agree with the conclusion of the referee that, if the plow company delivered to the village clerk a complete contract, entitled to be filed, the informalities or irregularities in the indexing or recording of the statutory information upon his books by the clerk will not affect the rights of the parties, and the trustee substantially concedes this to be the law, as well he may. Smith v. Waggoner, 50 Wis. 155, 6 N. W. 568; Phillips v. Hyland, 102 Wis. 253, 78 N. W. 431; Bailey v. Costello, 94 Wis. 87, 68 N. W. 663; Goodman v. Baerlocher, 88 Wis. 287, 60 N. W. 415, 43 Am. St. Rep. 893; Marlet v. Hinman, 77 Wis. 136, 45 N. W. 953, 20 Am. St. Rep. 102.

[2] In my judgment, however, the contract as filed was the complete contract between the parties, and operated as constructive notice from the time of its filing.   It seems to me that the proper test to apply in the determination of whether the contract as filed complied with the Wisconsin law is to inquire whether the contract as entered into upon October 16, 1919, could have immediately thereafter been filed as a completed contract between the parties, and, if so, whether, had it been filed at such time, it would have fully met the conditions of the Wisconsin Statutes applying to conditional sales contracts and the filing thereof.   If in law the contract was sufficiently complete to entitle it to filing immediately after its execution, the fact that something occurred later, or which, when applied to the contract, would definitely determine the prices of the goods, cannot, in my judgment, alter what was necessary to be filed, unless such subsequent occurrences served to create a new or different contract.

It is to be noted that, while the letter of Spiegelberg & Schmidt, dated December 5th, was subsequent to the establishment of the wholesale price to the spring trade, it makes no reference thereto, but by its very terms assumes the obligations of the contract "as written under date of October 16, 1919"; so that such letter, as well as the contract, treats the established wholesale price as a matter of evidence to be ap-

plied to the contract, to determine the exact prices to be paid for the goods covered thereby. Furthermore, it is apparent that the "regular wholesale dealers' prices established by the plow company for the 1920 spring trade," referred to in the original contract, might or might not be reduced to writing, might or might not be set forth in printed or written price lists, and might or might not be so established as to be capable of filing.

The price lists issued by the plow company were merely evidence, conclusive perhaps against it, but only binding the buyers if, in fact, such lists accorded with its actual wholesale prices, and therefore merely evidence tending to establish what the plow company's wholesale price was. The original contract nowhere provides that the buyers shall pay prices to be announced in any price list. The parties contracted with reference to "the regular wholesale dealers' prices established by the plow company for the 1920 spring trade," and the price lists issued were plainly the subject of inquiry by the buyers to determine whether such lists in fact conformed to "the regular wholesale dealers' prices," all of which merely goes to show that the price lists were not part of the contract, but were merely evidence tending to prove what the regular wholesale price was, which, in turn, when determined, could be applied to the contract, and thus the price of the goods definitely fixed. Being merely evidence, and not a part of the contract, it follows that there was no necessity for filing such lists.

Again, if the price lists were an essential part of the contract, what was the status of the transaction during the period between the execution of the contract and the issuance of the price lists? Manifestly the plow company was bound to deliver the goods to the buyers, and the buyers were bound to accept them. The only thing that remained to be determined was the price to be paid. The means for determining the price having been provided for, so that no further negotiations of the parties were necessary, the contract was complete. This was the rule at common law. McConnell v. Hughes, 29 Wis. 537; Cunningham v. Brown, 44 Wis. 72. And such is the rule in Wisconsin under the Uniform Sales Act. Wis. Stats. § 1684t9. Indeed, it was conceded by the attorney for the trustee that there is no question about the validity of the contract as between the parties thereto prior to the issuance of the price list.

The next inquiry is to determine whether, under the Wisconsin Conditional Sales Act, and particularly with reference to the rights of an attaching creditor, that being the status of the trustee here, there is any provision rendering invalid a contract such as is here in controversy. By section 1684u1, it is provided that a conditional sale means, among other things, any contract for the sale of goods under which possession is delivered to the buyer, and the property in the goods is to vest in the buyer at a subsequent time, "upon the payment of part or all of the price, or upon the performance of any other condition or the happening of any contingency."

By section 1684u4, every conditional sale is made valid as to all persons, except as otherwise provided in the chapter. By section 1684u5, it is provided in substance that every conditional sale shall be void as

to any creditor of the buyer who, without notice of such provision, acquires by attachment a lien upon them before the contract or a copy thereof "shall be filed as provided in this chapter," unless such filing is within 10 days after the making of the conditional sale. Section 1684u6 provides:

"The conditional sale contract, or copy, shall be filed in the office of the clerk of the town, village, or city in which the goods are first kept for use by the buyer after the sale."

Manifestly, in the foregoing provisions, there is nothing to modify the common-law and statutory rules hereinabove referred to, permitting a sales contract to provide merely a means for determining what the price of the goods shall be. But it is urged that by section 1684u10, the filing officer is required to—

"keep a separate book in which he shall enter the names of the seller and buyer, the date of the contract, the day and hour of filing, a brief description of the goods, *the price named in the contract* and the date of cancellation thereof, except that in entering the contracts mentioned in section 1684u8, the secretary of state shall record either the sum remaining to be paid upon the contract or the price of the goods. Such book shall be indexed under the names of both seller and buyer."

While it is conceded that the requirements of the section last quoted are directory, in the sense that they may be omitted by the filing officer for causes beyond the control of the person filing the instrument without prejudice to the rights of the latter, nevertheless it is contended essential that such a contract be presented to the filing officer as will afford him the information which he is required by the statute to enter in his book, and that among these entries is "the price named in the contract." Manifestly it was not intended by the Legislature that every conditional sale contract should name a price, for, as stated above, section 1684u1 recognizes conditional sales where the property in the goods is to vest in the buyer upon the performance of any other condition than the payment of the price or upon the happening of any contingency, so that it would seem that the requirement that the filing officer shall enter in his book the price named in the contract means nothing more than that, if the contract discloses the price, he shall enter it, just as entry of the date of cancellation depends on whether the contract is paid; that is to say, he would make such entry upon his book when the facts permitted or required it.

But, it is said, this is a contract whereby the property in the goods is to vest in the buyer upon the payment of the price, and hence the price must be stated. But this is not required by the statute. The statute says that the filing officer shall enter "the price named in the contract"—not that the contract shall name the price. The statute is fully complied with if the filing officer enters the price when it is named in the contract, and omits such entry if it be not named therein, and clearly, in the instant case, the filing officer would have complied strictly with the statute under discussion, had he inserted the provision of the original contract that the goods should be invoiced "at the regular wholesale dealers' prices," etc. It is quite evident that the Legislature, when it used the phrase "the price named in the con-

tract" in section 1684u10, meant something different from the "sum remaining to be paid upon the contract," and different from "the price of the goods," for all three phrases are found in this one section; the last two phrases being used with reference to contracts mentioned in section 1684u8 relating to railroad equipment. Acceptance of the trustee's contention, therefore, requires that the two phrases, "the price named in the contract" and "the price of the goods," mean exactly the same thing, and ignores the words "named in the contract," occurring in the first.

It is, of course, true that the intent of the Legislature can well be determined by viewing the Uniform Conditional Sales Act as a whole, and it appears that the Legislature had in mind to clarify the rights and obligations of the parties to such contracts, to establish their validity as to third persons, and also their invalidity as to certain third parties, among whom are certain creditors of buyers under unfiled contracts.

By section 1684u11, the filing of such contracts is valid for a period of three years. To extend the validity of such filing beyond such period, it is necessary that an affidavit be filed showing "the amount remaining to be paid." Nowhere do I find any language in the act evidencing any intention on the part of the Legislature that creditors be given information from the record of such contracts as to the equity of the buyer in such goods during the initial filing period of three years, except in connection with those contracts required to be filed in the office of the secretary of state and above referred to. What a creditor is most interested in is, first, whether or not the person to whom he contemplates giving, or has given, credit is the owner of property in his possession; and, second, how much he owes thereon. The Legislature has seen fit to require the first element of interest to be shown by the records from the outset, but has postponed the disclosure by the record of the second element until the expiration of the three-year period. Manifestly it was intended that the information required to be disclosed by the record should be limited, and interested third parties relegated to inquiry outside of the record for much of such detailed information as they might desire. The contract here disclosed the parties, the goods, and how the price therefor was to be determined, and I am convinced was sufficient.

Counsel for the trustee has cited the cases of Kimball Co. v. Mellon, 80 Wis. 133, 48 N. W. 1100, and Sheldon v. Mayers, 81 Wis. 627, 51 N. W. 1082. Both of these cases were decided upon the positive provisions of the statute of Wisconsin as it was then worded, providing that every conditional sales contract should be void unless signed by the parties thereto. The contracts filed and under consideration in those cases disclosed only the signatures of the buyers. The record in each of those cases, therefore, disclosed a contract expressly declared void by the statute. Clearly the cases are not in point here.

The case of Ford Motor Co. v. Maeder, 171 Wis. 263, 177 N. W. 39, likewise, in my judgment, has no bearing upon the instant case. In that case the contract did not disclose the time when payment should be

made thereunder. The statute as it then existed (section 2317) provided:

"The effect of such filing shall not extend for more than one year after the time fixed for payment of the contract price or for the performance of the other conditions of such sale."

Clearly the Legislature intended to limit the time during which the filing of a contract should be effective. It limited the time to one year after the time fixed for payment of the contract price. No time being fixed in the contract under consideration, the filing was either effective indefinitely, contrary to the plain intent of the Legislature, or was not effective at all. The Supreme Court rightly held it to be ineffective.

In view of these considerations, I am compelled to reverse the order of the referee, and the same is hereby reversed, in so far as the property is concerned that is in the possession of the trustee, and covered by the contract of October 16, 1919, and the matter remanded for further proceedings in conformity with this opinion.